**Catherine FISK, Appellee,**

v.

**SECURITY LIFE & TRUST COMPANY, Winston-Salem, North Carolina, Appellant.**

**No. 77–1425.**

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1978.

Decided May 2, 1978.

Ray A. Goodwin, Cathey, Goodwin & Hamilton, Paragould, for appellant.

John Burris, Pocahontas, Ark., and Scott Manatt, Corning, Ark., on brief, for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, HENLEY, Circuit Judge, and HANSON, Senior District Judge.*

* The Honorable William C. Hanson, United States Senior District Judge, Southern District of Iowa, sitting by designation.

HENLEY, Circuit Judge.

Plaintiff, Catherine Fisk, a resident of Corning, Arkansas, and the widow of J. D. Fisk, commenced this action in the Circuit Court of Clay County, Arkansas against the defendant, Security Life & Trust Company, Winston-Salem, North Carolina (now Integon Life Insurance Company), to recover on a policy of life insurance issued to Mr. Fisk in 1968. Mr. Fisk died by his own hand on May 2, 1970.

The policy was a level premium, decreasing term policy in the original sum of $12,-600.00. The term of the policy was 240 months or 20 years. That policy and an earlier one had been obtained by Mr. Fisk in connection with loans that he negotiated with Piggott Federal Savings & Loan Association of Piggott, Arkansas, which loans were secured basically by first mortgages on the residence of Mr. and Mrs. Fisk in the City of Corning. The suicide of Mr. Fisk occurred slightly less than two years after the policy in suit was purportedly issued.

After the death of Fisk, the insurance company denied liability on the basis of the fact that the insured had killed himself within two years after the issuance of the policy. Plaintiff then filed this suit for her own benefit and for that of the beneficiary which is the savings and loan association heretofore mentioned. Plaintiff sought recovery of the full amount of the policy, which at the time was slightly less than $12,000.00, plus interest and costs and the statutory penalty and attorney's fee allowed by Ark.Stat.Ann. § 66–3238 (Repl. 1966).

The defendant timely removed the case on the basis of diversity of citizenship and the requisite amount in controversy to the United States District Court for the Eastern District of Arkansas, Jonesboro Division. After removal the defendant filed its answer alleging as a defense the suicide of the insured.[1]

The pleadings were amended several times, and the case was finally the subject of a bench trial before Chief District Judge Garnett Thomas Eisele. After the trial Judge Eisele filed a full but unpublished memorandum opinion incorporating his findings of fact and conclusions of law, including those that he had announced orally from the bench at the conclusion of the trial.

The trial judge held that the contestable period available to the defendant was to be measured from the date of the earlier policy issued by the defendant to Mr. Fisk in January, 1964 and not by reference to the date of issuance of the policy in suit. As a result, the suicide defense of the defendant was rejected, and the insurance company was held liable for the full amount due on the policy, plus interest, costs and the statutory penalty and attorney's fee.

In his opinion Judge Eisele recognized that the Supreme Court of Arkansas has not passed squarely on the question presented in this case, and he evidently had some doubt as to the correctness of his decision.[2] He accordingly suggested an alternative solution to the problem before him whereby the plaintiff would still be entitled to recover but in a substantially smaller amount than that sued for.

Judgment was duly entered in the amount of $22,125.85, which included interest, penalty and attorney's fee, which fee was fixed by the district court at $4,000.00. It was directed that payment be made to Piggott Federal Savings & Loan Association and to plaintiff, as their interests might appear. In other words, any surplus funds remaining after the debt owing to the Association was paid would be paid over to the plaintiff.

1. Ark.Stat.Ann. § 66–3323(1)(b)(v) (Repl.1966) permits a life insurance company to exclude from coverage under one of its policies a death that occurs within two years from the date of issue of the policy as a result of suicide by the insured whether sane or insane. While a "suicide clause" in an Arkansas life insurance policy is an "exclusion clause" rather than a clause relating to the "contestability" or "incontestability" of the policy, we will refer to the two year period mentioned in the statute as the "contestable period."

2. It is unquestioned that the rights and obligations of the parties are governed by Arkansas law.

The defendant has appealed from that judgment. We modify the judgment and affirm it as modified. Controlling facts are not in dispute.

As its name implies Piggott Federal Savings & Loan Association (hereinafter Association) is a federally chartered federal savings and loan association which makes loans secured by first mortgages on residential properties.

During the period with which we are concerned the defendant (hereinafter Company) was presumably a North Carolina life insurance company which was authorized to do business in Arkansas. In the course of its business the Company wrote level premium, decreasing term life insurance policies, including policies on the lives of persons who borrowed money from lending institutions such as the Association.

Mrs. Georgia Lingle has been associated with the Association for many years, and since 1969 she has been its principal managing officer. In 1968 and probably in earlier years she was also the local agent for the Company in Piggott and was compensated on a commission basis for selling the Company's term insurance to persons borrowing money from the Association. However, borrowers were not required to take out insurance as a condition to obtaining loans, and a borrower who desired insurance was not required to deal with the Company in preference to other insurers.

A term insurance policy sold to a borrower was geared to his loan in the sense that the term of his policy was co-extensive with the life of the loan, and the amount of the policy decreased with the passage of time during which the loan would be paid off or reduced in amount. Although there was a relationship between the value of the policy at any particular time and the amount of the loan outstanding at that time, that value and that amount were not necessarily the same. If an insured died during the life of the loan, the proceeds of the policy were used first to discharge the balance due on the loan with the surplus, if any, being paid over to the widow or widower of the insured, or to his estate if there was no surviving spouse.

In each policy the Association was named as beneficiary, and the policy was mailed to and held by the Association rather than by the insured. There was nothing secret about this, and there is nothing to suggest that if an insured wished to examine his policy or to obtain or make a copy of it, his wish would not have been respected by the Association.

On December 9, 1963 J. D. Fisk borrowed $12,000.00 from the Association, and the loan was secured primarily by a mortgage on the Fisk home in Corning. Fisk was advised of the availability of term insurance, and he applied for a policy. On January 10, 1964 the Company issued and mailed to the Association its policy bearing the number BL623925 covering the life of Mr. Fisk. We will refer to that policy as the first policy. It was in the sum of $12,000.00 and had a term of 240 months. At that time the insured was forty years of age. Premiums on the insurance were calculated and included in the monthly payments that the insured made to the Association, and adjustments between the Association, Mrs. Lingle and the Company were made later and were of no real concern to the insured.

The policy contained the following "suicide" or "contestable" clause:

Self-destruction on the part of the Insured, whether sane or insane within two years from the date of this contract is a risk not assumed by the Company under this contract, and the extent of recovery hereunder shall be the premiums actually paid by the insured.

As of April 11, 1968 the balance owed by Fisk to the Association was $10,505.02, and, of course, there had been a decline in the amount payable under his insurance policy in the event of his death. On that date Fisk arranged to borrow from the Association an additional sum of $2094.98, which would increase his total debt to the Association to $12,600.00.

The transaction involved the cancellation of the original note and mortgage and the execution of new loan instruments. The

second note and mortgage showed a principal obligation of $12,600.00, which included the $10,505.02 balance owed on the original obligation.

There was some discussion between Fisk and Mrs. Lingle about insurance, and Fisk indicated that he wanted his new loan protected. On April 25, 1968 Fisk applied for a $12,600.00 policy, and he was issued such a policy by the Company on June 28, 1968 after he had submitted to a physical examination required by the Company. That policy, which bore No. 810132–BL, and which is the policy on which plaintiff sued, contained a suicide or contestable clause identical to the one contained in the first policy.

With respect to Fisk's conversation with Mrs. Lingle relative to obtaining additional insurance, Judge Eisele stated:

> . . . Fisk told Mrs. Georgia Lingle, manager of the savings and loan, and agent for Security, that he wanted life insurance to protect his new loan. On April 25, 1968, Fisk executed a second application for $12,600.00 decreasing term life insurance. Mrs. Lingle did not explore with Fisk the advantages of keeping the first insurance policy and buying additional life insurance only for the amount that his loan had been increased, that is, $2,094.98. She did not explain that by applying for the second policy, Fisk was giving up certain rights set forth in the incontestability clause of the first policy, which provided:
>
>> Except for the non-payment of premiums, and except for the provision regarding incorrect age, this contract shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from the date of the contract.
>>
>> Plaintiff's Exhibit 1, page 2, paragraph 1.
>
> Nor, did she point out to Fisk the possibility that buying a second policy in the amount of $12,600.00, instead of retaining his old policy and buying a new policy for the amount of the insurance in his loan,

would increase his total insurance cost because his increased age resulted in higher premiums.

Having so stated, the trial judge proceeded:

> Whether Fisk paid more for the insurance because he bought the $12,600.00 policy instead of retaining his old policy and buying a new policy for $2,094.98, was not clearly established at trial. The point is that Mrs. Lingle *did not explore* with Fisk the alternatives and the advantages and disadvantages of each.[3]

On June 28, 1968 the Second Vice President of the Company wrote Mr. Fisk as follows:

> We have issued the Home Protection Policy for which you have recently applied. It will protect your loan with Piggott Federal Savings and Loan Association, and we are today forwarding it to that institution.
>
> Your new policy is number 810132–BL, and it will replace your policy No. 623935–BL which we are cancelling. The liability of the company will be determined solely by the provisions of your new policy.
>
> Payment of the first monthly premium will place your new policy in force subject to the terms of the new policy and the application.

In this letter the Company clearly took the position that the second policy replaced the first and was a completely new contract between the parties.

On May 2, 1970, a date well within the two year period that began on June 28, 1968, Mr. Fisk killed himself. Proof of death was made; the Company denied liability and this litigation followed.

In his opinion Judge Eisele found, albeit with a good deal of reluctance, that the effective date of the policy in suit was June 28, 1968 and not the earlier April dates postulated by counsel for plaintiff. We have no trouble with that finding.

---

**3.** We think that it should perhaps he said at this point that there is nothing to indicate that Mr. Fisk ever requested Mrs. Lingle to engage in such explorations as to alternatives, advantages or disadvantages.

Judge Eisele also recognized the validity under Arkansas law of the suicide clauses of both policies, but he concluded that the second policy was simply an extension of the first policy, and that the relevant contestable period was to be determined by the reference to the effective date of the first policy that was issued in 1964. On that basis the district court rejected the suicide defense of the Company and awarded plaintiff the full amount sued for, plus statutory penalty and attorney's fee.

In coming to that conclusion the district court analogized the situation before it to that which exists where a life insurance policy is reinstated after a lapse for nonpayment of premium. In that situation the Supreme Court of Arkansas has held that if the insured is entitled to reinstatement of the policy as a matter of right, the insurance company may not legally enlarge the terms upon which reinstatement can be obtained by making the suicide clause of the original policy run for an additional period after reinstatement. *See New York Life Ins. Co. v. Campbell*, 191 Ark. 54, 83 S.W.2d 542 (1935); *Life & Cas. Ins. Co. of Tennessee v. McCray*, 187 Ark. 49, 58 S.W.2d 199 (1933); *Security Life Ins. Co. v. Leeper*, 171 Ark. 77, 284 S.W. 12 (1926); *New York Life Ins. Co. v. Adams*, 151 Ark. 123, 235 S.W. 412 (1921). *See also John Hancock Mut. Life Ins. Co. of Boston, Mass. v. Munn*, 188 F.2d 1 (8th Cir. 1951).

While there is no suggestion here that Mr. Fisk increased his loan and insurance coverage in 1968 in contemplation of suicide, and while we are not without sympathy for his widow, we do not believe that the holding of the district court can be fully sustained, and we think that the analogy used to support it is not entirely sound.

This case does not involve any question of reinstatement of a lapsed policy; the old one had never lapsed. Fisk had no "right"

to require the Company to write him a new policy replacing the old one or to write him an additional policy covering the specific $2,094.98 difference between his original obligation and his refinanced obligation. The amount just mentioned was an additional and substantial risk incurred by the Company, and we think that the Company was entitled to some protection against loss due to suicide by Mr. Fisk within the conventional two year contestable period.

The alternative theory advanced by the district court has some appeal, at least as far as result is concerned.[4] The premise of that theory is that the second policy never went into effect because it was never delivered physically to the plaintiff and that consequently the first policy was never cancelled and was in force on the date of the death of the insured.

However, we reject the alternative theory of the district court. We do not agree that the second policy did not become effective on June 28, 1968. If the second policy did not become effective because of lack of delivery to Fisk, neither did the first policy. Both policies were delivered to the Association for the mutual benefit of the Association and the insured. Fisk knew where the policies were, and he never asked to see them or to examine them. We think that delivery of the second policy to the Association while Mr. Fisk was in apparent good health amounted to delivery to him. And it is clear that it supplanted the original policy.

While as indicated we are unable to accept in full the ultimate conclusion which the district court drew in applying the law of Arkansas to the facts before us, we give substantial weight to the district judge's interpretation of the basic policy of the state law. *See, e. g., Smith v. Nick's Catering Service*, 549 F.2d 1194 (8th Cir. 1977); *Hysell v. Iowa Public Service Co.*, 534 F.2d

---

**4.** Under that theory the Company would be liable to the Association and to Mrs. Fisk for a substantial sum of money but for much less than the full amount for which plaintiff sued under the second policy. Moreover, the adoption of that theory would rule out the allowance to the plaintiff of any statutory pen-

alty or attorney's fee since in Arkansas before an insurance company is liable for such penalty and fee in a suit of this kind the plaintiff must recover the full amount sued for. *Ford Life Ins. Co. v. Jones*, 262 Ark. 881, 563 S.W.2d 399 (1978); *Southwestern Ins. Co. v. Camp*, 253 Ark. 886, 489 S.W.2d 498 (1973).

775 (8th Cir. 1976). According to the district court, it is the purpose of the statutorily approved suicide clause to protect insurance companies from risks that are unreasonable or are potentially so catastrophic and unpredictable that the companies should not bear the risks of their occurrence. At the same time the district court also has stated that the Arkansas Supreme Court holds that an incontestability clause need not be enforced when to do so will produce an inequitable result and when refusing to enforce such a clause will not subject the company to an unreasonable risk.

The basic interpretation of the district court provides an acceptable framework within which to decide the issues here and leads us to the conclusion that in the somewhat peculiar circumstances of this case and in fairness to the Association and Mrs. Fisk the protection afforded to the Company by the suicide clause appearing in the second policy should be limited to the excess of the value of the second policy at the time of the death of the insured over the value that the first policy would have had if it had been in force as of that time. As far as the value of the first policy is concerned, we agree with the district court that the Company is not entitled to be protected twice against the risk of a suicide taking place within a two year period. But, we do think that the Company is entitled to protection for that period with respect to its additional exposure under the second policy.

As stated, we affirm the judgment of the district court to the extent that it adjudicates that plaintiff has a right to recover against the defendant. We modify the judgment as far as amount of recovery is concerned and remand the case for recomputation of the amount to be allowed. Basically, plaintiff will be entitled to recover the equivalent of the amount that would have been due under the first policy on May 2, 1970 had the old policy remained in effect. She will also be entitled to the costs of the action in the district court. She will not be entitled to any award of penalty or attorney's fee. Some minor problems may arise in connection with questions of interest and premium differentials. If the parties cannot work out those problems, it will be open to the district court to resolve them.

The case is remanded to the district court for further proceedings not inconsistent with this opinion. Each side will bear its own appellate costs.

VAN OOSTERHOUT, Senior Circuit Judge, specially concurring.

Judge Henley's opinion fairly states the material facts and the issues presented. Our decision is controlled by Arkansas law. The Arkansas Supreme Court has not passed on the issues here presented or given any clear indication of how it would dispose of such issues. The view of Judge Eisele, an able and experienced Arkansas judge, on the law of his state is entitled to great respect. Judge Eisele's view of the applicable Arkansas law is reinforced by the confirmation of such view by our distinguished colleague from Arkansas in the majority opinion.[1] I concur in Judge Henley's opinion solely upon the ground that I cannot say with any degree of certainty that a permissible conclusion on the basis of Arkansas law has not been reached on the right to recover on the basis of the original policy, which has been voluntarily replaced by a new policy. I have no problem with respect to denying recovery on the additional insurance provided by the second contract and the denial of penalty and attorney's fees.

HANSON, Senior District Judge, specially concurring.

I concur in Judge Henley's opinion on the same grounds as set forth in Judge Van Oosterhout's special concurrence. Though in agreement with the result reached, I would limit this holding to the facts of the case and the application of Arkansas law thereto.

1. The recent four-to-three opinion of the Arkansas Supreme Court in *Ford Life Ins. Co. v. Jones, supra* note 4, reflects an extremely liberal attitude on the part of the Arkansas court in allowing recovery against insurance companies in questionable situations.