David **LAZOVICK**

v.

**SUN LIFE INSURANCE COMPANY OF AMERICA.**

**Civ. A. No. 82–3619.**

United States District Court,
E.D. Pennsylvania.

June 20, 1984.

Harold Einhorn, Philadelphia, Pa., for plaintiff.

Murray S. Levin, Patricia A. Carpenter, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiff, David Lazovick, instituted this diversity action for the payment of proceeds of a whole life insurance policy on the life of his deceased son, Bruce Lazovick. The defendant insurer, Sun Life Insurance Company of America (Sun Life), has refused to pay the proceeds of the policy to the plaintiff, the named beneficiary, on the ground that the insured committed suicide within two years of the date of the insurance policy in effect at the time of death, and that pursuant to the terms of that policy's suicide clause the defendant is only liable for a return of premiums. The plaintiff seeks payment of the policy proceeds and damages for intentional infliction of emotional distress resulting from the defendant's alleged bad faith refusal to pay the policy proceeds. The defendant has moved for summary judgment. For the reasons which follow, the motion for summary judgment will be granted and judgment entered in favor of the defendant and against the plaintiff.

■ A trial court may enter summary judgment if, viewing the evidentiary material of record in the light most favorable to the party opposing the motion, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Hollinger v. Wagner Mining & Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). Fed.R.Civ.P. 56(e) states that in order to oppose a summary judgment motion which is properly supported by affidavits based on the affiants' personal knowledge or by interrogatories, admissions and other evidentiary material of record, as is the defendant's motion in this case, an adverse party

may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Faced with evidentiary material which indicates that there is no genuine issue of material fact, an adverse party has the responsibility to produce significant probative evidence demonstrating that a genuine issue exists in order to avoid entry of judgment against him. *Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 96 (3d Cir.1982); *DeLong Corp. v. Raymond In-*

*ternational Inc.*, 622 F.2d 1135, 1139–40 (3d Cir.1980).

In support of its motion for summary judgment, the defendant has provided affidavits from Messrs. James Sidlowski and John Chell, Jr., excerpts from the plaintiff's deposition and the deposition of Sun Life agent Hertzel Freifelder, and facsimile copies of the two life insurance policies purchased by the deceased insured from Sun Life, along with applications for these policies and correspondence relating to the policies both before and after the insured's death. The plaintiff's response in opposition to the defendant's motion relies primarily on legal argument, claimed to be supported factually by inferences from the documentation provided by the defendant and from the death certificate of the insured.

The record in this case shows that there is no genuine issue concerning the following material facts. On or about May 22, 1979, Bruce A. Lazovick, the insured son of the plaintiff, now deceased, applied for a decreasing business term life insurance policy which provided for a 30-year term at an initial face value of $35,000. The insured's wife, Lori Lazovick, was the named beneficiary. Application for the policy was made through Hertzel Freifelder, an independent agent of Sun Life located in Philadelphia, Pennsylvania. On May 25, 1979, Sun Life approved the application and issued Policy No. 7909014 (the "1979 term policy"). This policy contained the following suicide clause:

### SUICIDE CLAUSE

If the Insured commits suicide, while sane or insane, within 2 years from the Issue Date, this policy shall terminate and the Company's liability will be limited to an amount equal to the premiums actually paid, without interest.

The 1979 policy was delivered to Bruce Lazovick on or about June 4, 1979. Under the terms of the 1979 policy, payment of the second annual premium was due on May 22, 1980. The second annual premium payment was never made, and the 1979 policy lapsed due to non-payment on June 22, 1980. Sometime in May, 1980, while the 1979 term policy was still in effect, Bruce Lazovick contacted Freifelder and stated that he wished to arrange a meeting to review his insurance program because he was not satisfied with his existing coverage. On June 4, 1980, Bruce Lazovick applied to Sun Life for a $50,000 modified whole life insurance policy. On June 17, 1980, Sun Life approved this application and issued Policy No. 8011361 (the "1980 whole life policy"). The insured's wife, Lori Lazovick, was again named a primary beneficiary. On or about June 24, 1980, the 1980 policy was delivered to Bruce Lazovick. The 1980 whole life policy contained the same two year suicide clause contained in the 1979 term policy.

On December 18, 1981, within two years of the issue date of the 1980 whole life policy but more than two and one-half years after the issue date of the 1979 term policy, Bruce Lazovick was found dead in his residence. The death certificate stated that the cause of death was hanging, with an indication that an investigation was "pending" as to whether death was caused by homicide, suicide, accident, or other cause. Furthermore, the plaintiff, when asked how his son [the insured] died, responded at page 16 of his deposition: "Suicide."

Prior to his death, the insured made an effective change in beneficiary from his wife, Lori Lazovick, to his father, the plaintiff in this case. The plaintiff subsequently filed a claim with Sun Life for $50,000, the value of the 1980 whole life policy. Sun Life denied the claim based on the contention that the insured's death was by suicide within two years of the issuance of the 1980 policy, the only policy in force at the time of death. As provided by the terms of the suicide clause, Sun Life tendered to the plaintiff an amount equal to the premiums actually paid, plus interest. The plaintiff refused this payment and instituted the instant action.

■ The principles which govern this Court's interpretation of a contract of insurance under Pennsylvania law are well settled. The task of interpreting a contract is generally performed by the court rather than by a jury. *See Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 398 A.2d 1378 (1979); *Community College of Beaver County v. Society of the Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977). The goal is to ascertain the intent of the parties as manifested by the language of the written instrument. *See Mohn v. American Casualty Co. of Reading*, 458 Pa. 576, 326 A.2d 346 (1974). Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. *See Mohn*, 458 Pa. at 586, 326 A.2d at 351. Where, however, the language of the contract is clear and unambiguous, a court is required to give the words their plain and ordinary meaning. *Northbrook Insurance Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir.1982); *Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967). Moreover, "in the absence of proof of fraud, 'failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.'" *In re Olson's Estate*, 447 Pa. 483, 488, 291 A.2d 95, 98 (1972) (*quoting Orner v. T.W. Phillips Gas & Oil Co.*, 401 Pa. 195, 199, 163 A.2d 880, 883 (1960)). Application of these principles to the insurance contract at issue in this case requires the conclusion that the plaintiff is precluded from recovering the proceeds of the 1980 policy.

■ It is an uncontested fact that at the time of the insured's death, the 1979 term policy had lapsed for non-payment, and the 1980 whole life policy was the only policy in effect. Pursuant to the language of the suicide clause in the 1980 whole life policy, recovery was limited to the premiums actually paid because the insured committed suicide within two years of the issue date of the policy. To avoid the effect of this suicide clause, the plaintiff contends that the 1980 whole life policy was a conversion of the earlier 1979 term policy and that, as a result, the applicable issue date for purposes of interpreting the suicide clause of the 1980 whole life policy is the issue date of the 1979 term policy. Under the plaintiff's theory, the insured's suicide more than two years after the earlier issue date does not preclude recovery of the proceeds under the 1980 whole life policy. The Court finds the plaintiff's theory unpersuasive because the theory necessarily depends on a finding that the 1980 whole life policy is a conversion of the earlier 1979 term policy. There is simply no basis in this record or in the applicable law for the plaintiff's contention that such a conversion took place or was intended by the parties.

■ There is no statutory or common law right under Pennsylvania law to convert existing life insurance into another form of coverage. An insurer is not required to include a conversion provision in a term life insurance policy, but "may" do so at its option. *See* 40 Pa.Cons.Stat.Ann. § 571 (Purdon's 1971). In this case, the 1979 term policy issued to Bruce Lazovick did include a conversion privilege, which stated in pertinent part:

PROVISIONS FOR CONVERSION TO ANOTHER FORM OF POLICY

Upon proper written application and surrender of this policy to the Company at the Home Office while no premium for the Basic Plan of Insurance Benefit is in default beyond the grace period, this policy may be converted without evidence of insurability to a new policy ... on the same life, subject to the following provisions:

.    .    .    .    .

[c] ... The amount of insurance under the new policy shall not be greater than the Face Amount of the Basic Plan of Insurance Benefit for the policy month in which the conversion occurs.

Any conversion of the 1979 term policy was governed by the terms and conditions of this conversion provision included in the

policy. *See* 1 J.A. Appelman and J. Appelman, Insurance Law and Practice, 33 at 19–20 (Rev.Vol. 1 1981). The clear and unambiguous language of the provision requires a written application and surrender of the original policy in order to convert to another form of policy. The plaintiff has not put forth any reasonable alternative interpretation of this provision.

There is no evidence in the record that Bruce Lazovick made the required application for conversion or that he surrendered the "original" 1979 term policy. The affidavit submitted by Mr. John Chell states that the only application received by Sun Life in 1980 was the application for the $50,000 modified whole life policy, and that no application for conversion was ever made. In this regard, it is significant to note that had Bruce Lazovick chosen to convert the 1979 term policy, he could not have converted it under its terms for the $50,000 of whole life insurance for which he applied in 1980. As of June 4, 1980, the date of that application, the 1979 term policy could only have been converted into a whole life policy for an amount equal to the benefits available under the 1979 policy on that date, an amount the record indicates was only $33,845. Therefore, under the express terms of the conversion clause in the 1979 term policy, the 1980 policy cannot be construed as a conversion of the earlier policy. *See Nielsen v. General American Life Insurance Co.*, 89 F.2d 90, 93 (10th Cir.1937).

Even if the Court were to disregard the formal requisites for conversion under the 1979 term policy, there is no evidence that Bruce Lazovick intended the 1980 policy to be a conversion or replacement of the earlier policy. Sun Life agent Hertzel Freifelder met with Bruce Lazovick, at his request, on June 4, 1980 to re-evaluate his insurance program. Freifelder stated in his deposition that during the meeting Bruce Lazovick indicated that he wanted a policy which would generate some equity cash value, a saving feature which the 1979 business term policy did not have. Freifelder stated that he responded by recommending that he purchase the new $50,000 whole life policy in addition to his existing coverage under the $35,000 decreasing term policy. Freifelder explained that he recommended this additional coverage because he felt that the decreasing term policy, by itself, was inadequate protection for a young man like Bruce who would potentially have a family at a later date. This explanation is consistent with the limited purpose of decreasing term insurance which "finds its particular niche in relation to mortgages," and which is designed "to discharge the encumbrance in the event of the insured's death while the mortgage is still in force." *See* 1 Appelman & Appelman, *supra*, § 4 at 21. In fact, a June 4, 1979 letter from Freifelder to the insured, referred to the term policy as "mortgage" insurance.

Freifelder also stated that at no time during the course of the June 4, 1980 meeting did Bruce Lazovick mention conversion of the 1979 policy, nor did he indicate that he wanted to drop his existing coverage or substitute a new policy for the existing one. Rather it was Freifelder's impression that the insured wanted both policies: the agent stated that when he recommended that the insured have both policies, the insured agreed with him that having the additional insurance made sense. Freifelder further stated that there was no logical basis for a conversion: "there was no connection between the 1979 policy and the 1980 policy at all. [The 1980 application] was simply a new application for insurance." He explained that the conversion option only makes sense when there is a problem of insurability, i.e. where a policyholder has a deteriorated physical condition and cannot qualify for new insurance. This was not the case with Bruce Lazovick who was only 25 years of age at the time of his application for the 1980 policy. *See* 1 Appelman & Appelman, *supra*, § 5 at 22–23 ("Convertible term insurance ... takes into consideration the smaller resources, and heavier relative expenses, of the younger wage-earner who may desire permanent insurance but be unable to pay the premium costs. This, in effect, insures against future uninsurability ...").

That the 1980 application was an application for new insurance, unrelated to the existing insurance under the 1979 term policy, is supported by the application form itself which was filled out by Freifelder. In response to question #14, which asked whether the policy being applied for was intended to "REPLACE in whole or in part" any other coverage with Sun Life or any other company, the agent answered "no." In contending that there is a genuine issue of material fact as to whether the insured sought a second policy to be carried as additional insurance, the plaintiff points to the agent's failure to list the 1979 term policy in answering question #12 on the 1980 application, which asks whether the applicant has other insurance with Sun Life which is in force at the time of application. The plaintiff also relies on a missing commission card on the 1979 term policy which "might have" indicated the reasons for writing the 1980 whole life policy. However, these two omissions or irregularities do not constitute evidence of conversion or of intent to convert, particularly in light of the policy's express provision governing conversion and in light of the denial on the 1980 application that the new policy was intended to replace, in whole or in part, existing coverage with Sun Life. For the above reasons, the undisputed facts of record show that the 1980 whole life policy was not a conversion of the 1979 term policy.

■ The plaintiff offers an alternate theory which he claims will allow recovery even if an actual conversion did not take place. Plaintiff contends that the 1980 whole life policy should be determined by the Court to be "either an implied or constructive conversion" of the 1979 policy, based on the insurer's duty to advise the insured of his contract right to convert the policy. Under the plaintiff's theory, Freifelder breached this fiduciary duty by failing to advise the insured of his conversion option. As a "logical means of compensation" for this alleged breach, the plaintiff would have this Court treat the 1980 policy as a conversion. Again, the Court finds the plaintiff's theory factually and legally

unsupportable. The plaintiff has not raised a genuine issue of material fact in support of his contention that a fiduciary relationship existed between Bruce Lazovick and Hertzel Freifelder. There is nothing in the summary judgment record which raises a genuine issue of fact that Freifelder acted as the insured's agent or in any other confidential relationship with the insured. Rather the uncontested facts of record show that Freifelder was Sun Life's agent, selling insurance to Bruce Lazovick in an arm's length transaction.

Furthermore, there was no reason for Freifelder to caution the insured about using conversion as a means of retaining valuable rights and benefits under the 1979 policy; Freifelder expected those benefits to remain intact, because it was his impression that the insured wanted both policies. Freifelder stated that sometime after June 27, 1980, when he became aware that the annual premium due on the 1979 term policy had not been paid, he contacted the insured and advised him to pay this premium to continue the policy under the terms of the Late Payment Offer.

Mr. Freifelder was, in any event, under no legal duty to advise Bruce Lazovick concerning conversion of the policy. Bruce Lazovick was on notice that the possibility of conversion existed; the conversion provision in the 1979 term policy was clearly entitled "PROVISIONS FOR CONVERSION TO ANOTHER FORM OF POLICY" and was conspicuously displayed in the contract. The suicide clause was similarly conspicuous and unambiguous in language. Until recently, the insured might well have contended that the effect of these clear and unambiguous provisions could be avoided by showing that the insured was neither made aware of nor understood the effect of the provisions. See *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 517–18, 327 A.2d 363, 366 (1974). See also *Williams v. Nationwide Insurance Co.*, 571 F.Supp. 414, 416–17 (M.D.Pa.1983) (insurer precluded by *Hionis* from asserting suicide clause). However, this duty on the part of the insurer to explain contract pro-

visions to an insured was recently rejected by the Pennsylvania Supreme Court in *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983). In rejecting the *Hionis* rule and its progeny, the court held that where "the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." *Standard Venetian Blind*, 503 Pa. at 307, 469 A.2d at 567. "Thus, the relative knowledge and understanding of the insured is no longer relevant, provided that the exclusion is clear and conspicuous." *St. Paul Surplus Lines Insurance Co. v. 1401 Dixon's, Inc.*, 582 F.Supp. 865, 869 (E.D.Pa.1984) (Giles, J.). The holding of *Standard Venetian Blind* requires a rejection of the plaintiff's theory of constructive conversion.

■ The plaintiff's failure to raise a genuine issue of material fact concerning his allegation of an actual or constructive conversion of the 1979 policy requires entry of judgment for the defendant. The Court notes that even were a conversion or replacement of the policy to be found, the plaintiff would still be required to show that there was no substantial difference between the 1979 and 1980 policies in order for the operation of the suicide clause to be calculated from the effective date of the old policy rather than the date of the new policy. *See* 1B Appelman & Appelman, *supra*, § 499 at 384 n. 10; 9 Couch on Insurance § 40.52 at 680 (2d ed. 1962); 7 S. Williston, A Treatise on the Law of Contracts § 912 at 401–02 (3d ed. 1960): *See also Gans v. Aetna Life Insurance Co.*, 214 N.Y. 326, 108 N.E. 443 (1915) (term policy exchanged upon application for ordinary life policy; suicide clause given effect from date of later policy even though identical clause appeared in earlier term policy); *Binkley v. Manufacturers Life Insurance Co.*, 471 F.2d 889, 892 (10th Cir.), *cert. denied*, 414 U.S. 877, 94 S.Ct. 130, 38 L.Ed.2d 122 (1973) (suicide clause runs from date of conversion from group to individual policy where individual policy contains separate and distinct terms). The plaintiff relies on *Datesman v. Federal Life Insurance Co.*, 35 D & C 251 (C.C.P. 1938), in which a policy was reinstated and the plaintiff received the benefit of the date of the original policy in determining the effect of a suicide clause. The present case, however, does not concern reinstatement of an original contract but rather two distinctive contracts with essentially different purposes and terms. The lack of connection between the two policies and the lack of evidence that the insured intended a conversion or replacement of the policies also distinguishes the instant case from other cases the Court has considered in which the suicide clause in a new policy was governed by the date of an older policy. *Aetna Life Ins. Co. v. Dunken*, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342 (1924); *Moore v. John Hancock Mutual Life Insurance Co.*, 436 F.2d 823 (5th Cir.1971); *Swanson v. First Fidelity Life Ins. Co.*, 214 Neb. 654, 335 N.W.2d 538 (1983); *Founders Life Assur. Co. v. Poe*, 242 Ga. 748, 251 S.E.2d 247 (1978); *Morse v. General American Life Insurance Co.*, 130 Neb. 37, 263 N.W. 676 (1935); *Commonwealth Life Insurance Co. v. Jackson*, Ind.App., 432 N.E.2d 1382 (1982); *Occidental Life Ins. Co. v. Hurley*, 513 S.W.2d 897 (Tex. Civ.App.1974).

■ The plaintiff also relies on *Fisk v. Security Life & Trust Co.*, 575 F.2d 1242 (8th Cir.1978), holding that where an insured's first decreasing term policy issued in connection with a mortgage and containing a two year suicide clause was replaced, after the loan was increased, with a second term policy containing the same clause, the insured's death within two years of the issuance of the second policy did not preclude the insured's recovery under the second policy. In *Fisk*, a case based on Arkansas law, there was a clear connection between the two policies not present here. In addition, the Eighth Circuit relied on the "extremely liberal" approach of the Arkansas courts in allowing recovery on insurance policies, which focuses on the equities

of the result rather than the language of the policy. 575 F.2d at 1247 & n. 1. Such an approach is not tenable under Pennsylvania law in light of *Standard Venetian Blind,* discussed above. This Court is obliged to apply the plain language of the insurance contract, since there is no evidence of unconscionability or any other basis to deviate from this plain language.

 The plaintiff has also asserted a claim for intentional infliction of severe emotional distress on the basis of the defendant insurer's alleged bad faith refusal to pay plaintiff's claim to the proceeds of the 1980 policy. Since judgment will be entered for the defendant on the plaintiff's claim to the proceeds of the policy, there is no factual basis to support this claim. Moreover, damages are not recoverable for an insurer's "bad faith" conduct in denying an insurance claim, *D'Ambrosio v. Pennsylvania National Mutual Casualty Co.,* 494 Pa. 501, 507–08, 431 A.2d 966, 970 (1981), since the exclusive remedy for such conduct is under Pennsylvania's Unfair Practices Act, 40 Pa.Stat.Ann. § 1171.1 *et seq.* (Purdon's Supp.1981).

Finally, although the plaintiff's brief sets forth the contention that a material issue of fact exists as to whether the insured committed suicide, this contention is without merit. Although it is well established that the defense of death by suicide is an affirmative one, as to which the defendant insurer has the burden of proof, *Watkins v. Prudential Ins. Co.,* 315 Pa. 497, 508, 173 A. 644, 650 (1934), in this case the plaintiff admitted in his deposition that his son committed suicide. Such admissions are binding and conclusive upon the party making them. *See Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3d Cir. 1972); 9 Wigmore on Evidence, § 2588 at 822. *See also* Fed.R.Evid. 803(19). There is no question that it is appropriate to consider a party's admission made in a deposition in determining whether there is a genuine issue of material fact for the purpose of summary judgment. *Western Union Telegraph Co. v. N.C. Direnzi, Inc.,* 442 F.Supp. 1, 4 (E.D.Pa.1977). Moreover,

the circumstances of the insured's death are consistent with suicide. *See also Watkins,* 315 Pa. at 505, 173 A. at 648 (no "presumption against suicide" in Pennsylvania law); *Pollard v. Metropolitan Life Insurance Co.,* 598 F.2d 1284, 1287 (3d Cir.), *cert. denied,* 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 171 (1979) (same).

There being no genuine issue of material fact preventing entry of judgment for the defendant as a matter of law, the defendant's motion for summary judgment will be granted. An order follows.