**Donald L. HESS, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

Civ. A. No. 83–1322.

United States District Court, W.D. Pennsylvania.

July 31, 1985.

William P. Chapas, Pittsburgh, Pa., for plaintiff.

David White, Dickie, McCamey & Chilcote, Pittsburgh, Pa., and William T. Barker, Chicago, Ill., for defendant.

OPINION

COHILL, Chief Judge.

Presently before us is Defendant's Motion for Partial Summary Judgment. This action was originally filed in the Court of Common Pleas of Allegheny County and removed to the Court pursuant to 28 U.S.C. § 1441. We have jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332. The amount in controversy exceeds $10,-000.

*Introduction*

Plaintiff in this case claims that a "coordination of benefits" provision in an automobile no-fault insurance policy, which he purchased from Defendant, should not be given effect. The coordination of benefits provision provided that, in return for a reduction in Plaintiff's insurance premium, Plaintiff's health insurance would be the primary source of benefits in case of an accident, with Plaintiff's automobile insurance covering any additional costs. Plaintiff claims that he is entitled to payment from Defendant of the full value of his medical claims, in spite of the coordination of benefits provision, because Defendant's agent allegedly fraudulently induced him into making the election, and misrepresented or omitted relevant information in selling him the policy.

Plaintiff alleges causes of action based on breach of contract, common law fraud, and violation of the Pennsylvania Unfair Trade Practices Act, 40 Pa.Stat.Ann. 1171 *et seq.* (Purdon Supp.1984)

Allstate has moved for partial summary judgment as to Plaintiff's claims for additional medical benefits. While Plaintiff's original complaint also stated a claim for additional work loss benefits, based on a "stacking" theory, counsel for Plaintiff conceded at oral argument that this claim is no longer valid in light of the decision of the Pennsylvania Supreme Court in *Antanovich v. Allstate Insurance Co.* — Pa. —, 488 A.2d 571 (1985).

The parties have filed pretrial statements as well as a stipulation of facts. Because we find that there are no material facts in dispute, and because we find Defendant is entitled to judgment as a matter of law, we will grant Defendant's motion and enter judgment for Defendant in this case.

FACTS

Plaintiff, Donald Hess, resided in Ohio from 1967 to 1969, where he was employed as an insurance agent for Allstate. Stip. ¶ 5. He held an automobile insurance policy issued by Allstate while he lived in Ohio. Subsequently, Hess moved to Pennsylvania and left the employ of Allstate. *Id.* The Ohio policy was transferred to Pennsylvania and remained in effect through July 18, 1975. On that date, Plaintiff's policy was amended to include no-fault coverage, pursuant to the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 Pa.Stat.Ann. § 1009.101 *et seq.* (Purdon Supp.1984), *repealed,* Act of February 12, 1984, P.L. 26, No. 84–11 *as amended by Act of February 12, 1984,* P.L. 53, No. 84–12, 1984 Pa.Legis. Serv. 91 ("No-Fault Act"). That policy, as amended, remained in effect until it was cancelled on August 21, 1978.

From September 1, 1978 until September 1, 1980, Plaintiff held an assigned-risk automobile insurance policy issued by Allstate. The policy covered two cars, and was referred to Allstate by the Pennsylvania Automobile Insurance Plan. *Id.* ¶ 6.

On or about July 31, 1980, Allstate sent Plaintiff renewal materials for the policy expiring September 1, 1980, and a letter (the "Takeout Letter") offering to insure Plaintiff as a regular (non-assigned risk) policyholder at Allstate's regular rates. *Id.* ¶ 7. The Takeout Letter stated, in part,

DO YOU WISH TO ACCEPT OUR OFFER OF COVERAGE? IF SO, BRING THIS LETTER TO AN ALLSTATE AGENT. THE AGENT WILL BE HAPPY TO EXPLAIN, IN DETAIL, THE

COVERAGES, AND BENEFITS AVAILABLE UNDER A POLICY ISSUED BY ALLSTATE INDEMNITY COMPANY. AN AGENT CAN ALSO INITIATE THE ISSUANCE OF A POLICY AT YOUR REQUEST.

*Id. See also* Stip. Ex. B.

On August 29, 1980, Plaintiff took the Takeout Letter to an Allstate office. *Id.* ¶ 8. Plaintiff spoke with Janet Haggerty, an Allstate agent, who took Plaintiff's application for a policy of voluntary private passenger insurance. Plaintiff signed the application. *Id.* Pursuant to the application, Allstate issued Plaintiff a policy which contained a coordination of benefits endorsement. *Id.*

Section 203 of the No-Fault Act provides, in part,

(b) The owner or operator of a motor vehicle may elect to provide for security in whole or in part for the payment of basic loss benefits through a program, group, contract or other arrangement that would pay to or on behalf of the victim or members of his family residing with him or the survivor of a deceased victim, allowable expense, loss of income, work loss, replacement services loss and survivors loss.

In all such instances, each contract of insurance issued by an insurer shall be construed to contain a provision that all basic loss benefits provided therein shall be in excess of any valid and collectible benefits otherwise provided through such program, group, contract or other arrangement as designated at the election of the owner or operator which shall be primary.

(c) An insurer providing basic loss benefits and tort liability in accordance with the provisions of subsection (b) above shall reduce the cost of such contract of insurance to reflect the anticipated reduction in basic loss benefits payable by the insurer by reason of the election of the owner or operator to provide substitute security.

40 Pa.Stat.Ann. § 1009.203(b), (c).

In order to implement the provisions of section 203 of the No-Fault Act, Allstate developed an endorsement which provides, in part,

*Coordination of Benefits*

In consideration of a reduction in premium and subject to the coverages and limits shown in the declarations, it is agreed that:

1. IF MEDICAL EXPENSES benefits are identified as excess under Coverage VA on the declaration, Allstate shall not be liable to the extent that any elements of loss covered under Personal Injury Protection MEDICAL EXPENSES benefits are paid, payable or required to be provided to or on behalf of the NAMED INSURED or any RELATIVE under the provisions of any valid and collectible

(a) individual, blanket or group accident disability, or hospitalization insurance,

(b) medical or surgical reimbursement plan,

(c) workmen's compensation law, or similar disability law, or any state or federal government laws, or

(d) automobile or premises insurance affording MEDICAL EXPENSES benefits.

*See* Stip. Ex. A, Endorsement.

At all times since July 18, 1975, it has been Allstate's policy to include the endorsement in all policies of Pennsylvania No-Fault insurance issued to vehicle owners or operators who made the election authorized by section 203(b) of the No-Fault Act, and not to include the endorsement in such policies issued to persons not making that election. *Id.* ¶ 4.

Neither Plaintiff nor Defendant's agent who sold Plaintiff the policy has any current recollection of what, if anything, was said on August 29, 1980 regarding the meaning, significance, and effect of a coordination of benefits election or the resulting inclusion of the endorsement in the Policy purchased. *Id.* ¶ 8.

Pursuant to Plaintiff's application and binder, Allstate issued the policy sued on in this action. Plaintiff received a premium reduction as a result of the coordination of

benefits election and the resulting inclusion of the endorsement in the policy. *Id.*

The policy, including the endorsement, was renewed in March and September 1981. *Id.* On December 15, 1981, while the policy was in effect, Plaintiff was injured in an automobile accident. *Id.* ¶ 1. As a result of the accident, Plaintiff incurred and continues to incur substantial medical and rehabilitation expenses which qualify as "allowable expenses" under the No-Fault Act. *Id.* ¶ 9. At the time of the accident Plaintiff was also covered by a Blue Cross/Blue Shield plan maintained through his employer, which also provided for payment of these expenses. *See* Stip. Ex. D.

As of the date of the Stipulation entered into by the parties, Blue Cross/Blue Shield had paid benefits in the total amount of $61,807.38, of which $15,364.00 was paid in 1982 under the major medical portion of the Blue Cross/Blue Shield coverage. *Id.* ¶ 14. The parties further agree that all "allowable expense" incurred by Plaintiff as a result of the accident has been paid by either Allstate or Blue Cross/Blue Shield. Accordingly, the parties agree that if the endorsement is valid and effective, Allstate is not liable for any additional benefits on account of "allowable expense" incurred to date. *Id.* ¶ 16.

*Plaintiff's Claims*

Plaintiff claims that Allstate failed to explain to him, either orally or in writing, the effect of the coordination of benefits endorsement, and that his election to include it in the policy was invalid and ineffective. *Id.* ¶ 2, 10. Plaintiff also claims that Defendant's agent fraudulently induced Plaintiff to purchase the policy with the coordination of benefits provision. Plaintiff's Pretrial Statement, at 1.

Specifically, Plaintiff contends that Allstate was obliged to inform him, prior to the making of any coordination of benefits election, of (a) the availability of a double recovery of medical payments arising from both Allstate and Plaintiff's Blue Cross/Blue Shield plan if no coordination of benefits election was made; and (b) the

possibility that medical expense benefits paid under Plaintiff's Blue Cross/Blue Shield plan as a result of an automobile accident might exhaust or reduce the limits of coverage under that plan and so leave Plaintiff and his family without medical insurance or with less medical insurance applicable to illnesses and injuries unrelated to the use or operation of a motor vehicle. *Id.* ¶ 11.

*Defendant's Motion for Summary Judgment*

Defendant argues that all of Plaintiff's claims are based on the allegation that he was misinformed or inadequately informed by Allstate as to the meaning and effect of the endorsement prior to and at the time he elected it, with the result he was unable to make an informed decision as to the election. Defendant's Motion for Summary Judgment, at 2. Allstate asserts that there is no evidence in the record, apart from Plaintiff's allegations, of 1) any affirmative misrepresentations regarding the coordination of benefits election; or 2) any failure by Allstate to disclose the relevant facts. *Id.* at 4. Further, Allstate argues that there is no evidence that Plaintiff was not fully informed as to the effect of the election on double coverage or Plaintiff's other medical benefits, or that he relied on Allstate to advise him either when making the election or when renewing the policy. *Id.*

Defendant has moved for summary judgment with respect to the other claims asserted in this action, arguing that they are based on the same facts as Plaintiff's breach of contract claim. In addition, Allstate argues that the Pennsylvania Unfair Trade Practices Act is inapplicable to the business of insurance.

*Standard*

Rule 56, provides, in part, that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judg-

ment as a matter of law." Fed.R.Civ.P. 56(c).

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest on the mere allegations or denials of his pleading, but *his response*, by affidavits or as otherwise provided in this rule, *must* set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(c) (emphasis added). *See Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981).

We are, of course, aware that any doubts as to the existence of genuine issues of material fact are to be resolved against the moving parties. *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982); *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). Further, the facts and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 404 (3d Cir.1981).

DISCUSSION

■ It is well established that the language of a contract clause which limits liability coverage must be clear and precise in order to prevent unfair surprise. *Bishop v. Washington*, 331 Pa.Super. 387, 480 A.2d 1088, 1095 (1984) (citing *K & C, Inc. v. Westinghouse Electric Corp.*, 437 Pa. 303, 308–09, 263 A.2d 390, 393 (1970)). The goal in interpreting an insurance contract, like any contract, is to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Votedian v. General Accident Fire & Life Assurance Corp.*, 330 Pa.Super. 13, 478 A.2d 1324, 1326 (1984) (quoting *Standard Venetian Blind*

*Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983)).

■ In *Standard Venetian Blind* the Supreme Court of Pennsylvania held that an insured may not avoid the effect of a clear and unambiguous exclusion clause in an insurance contract by showing that it was either unaware or did not understand the effect of the exclusion. 469 A.2d at 564, 566–67. *Standard Venetian Blind* thus overruled *Hionis v. Northern Mutual Ins. Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974), which held that, in order to rely upon an exclusion in an insurance policy, the insurer must show that the insured was aware of and understood its effect. *Id.* at 517, 327 A.2d at 365. After *Standard Venetian Blind*, the relative knowledge and understanding of the insured is no longer relevant, provided that the exclusion is clear and conspicuous. *See St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's Inc.*, 582 F.Supp. 865, 869 (E.D.Pa.1984). The *Standard Venetian Blind* decision has been given retroactive effect. *Short v. Metropolitan Life Ins. Co.*, 339 Pa.Super. 124, 488 A.2d 341, 343–44 (1985). The only exception, where the *Hionis* line of cases remains potentially applicable, is where the limitation clause was ambiguous or unconscionable at the time it was made. *Standard Venetian Blind*, 469 A.2d at 567. *See also Haegele v. Pennsylvania General Ins. Co.*, 330 Pa.Super. 481, 479 A.2d 1005, 1011 (1984).

In the case at bar, Defendant has submitted five affidavits in support of its summary judgment motion. It also relies on the depositions taken in the case.

The affidavit of Janet Haggerty, the Allstate agent who sold Plaintiff the policy in question, states that she took the insurance policy application from Plaintiff on or about August 29, 1980. Haggerty Aff., at 1. Ms. Haggerty states that she does not recall what she and Mr. Hess discussed, but that the policy application reflects that Plaintiff requested coordination of benefits with respect to the medical expense portion of the personal injury protection coverage ("PIP") included in the policy. *Id. See*

Stip., Ex. C. Ms. Haggerty stated that, prior to the repeal of the No-Fault Act, when selling a policy of insurance, she always inquired whether the prospective insured had medical insurance and, if so, explained the availability of coordination of benefits. Haggerty Aff. at 1. She explained that, if the insured took the regular coverage, Allstate would pay all expenses arising from automobile accidents. *Id.* She also explained that if a prospective insured chose to coordinate benefits, he would save 40% on his PIP premium and his other medical insurance would be primary, with Allstate providing secondary coverage. *Id.* at 1–2. Ms. Haggerty stated that this was her routine practice. *Id.* at 2.

In addition, Ms. Haggerty's affidavit states that her routine initial explanation of the coordination of benefits option did not address 1) the impact of the option on the prospective insured's other insurance coverage; 2) whether election of the option might reduce the available insurance under other insurance coverage relating to medical expenses; or 3) whether the insured might be able to obtain benefits under both an automobile policy and other medical insurance if he chose not to coordinate benefits. *Id.* Ms. Haggerty stated that she has never made any statement regarding the nature and effect of a coordination of benefits election in order to induce anyone to elect the provision unless she was confident the statement was true. She stated that at no time has she ever concealed or withheld any information which she thought a potential insured might wish to know about the nature and effect of a coordination of benefits election. *Id.*

Defendant also submitted the affidavits of the following Allstate employees: Margaret Spohrer, Communication's Administrator; George Van Ryan, Product Administration Director; Barry Nicholas, Senior Project Manager, Systems Department; and Gary Laughern, an Actuary specializing in group medical insurance. The affidavits explain Allstate's regular business practice with respect to the mailing of various informational brochures. The affidavits state that one packet of information, consisting of inserts X1640 and X1415–1, were inserted in all renewal offers sent to all "line 12" policyholders for the year commencing November 1, 1979. Van Ryan Aff. at 1–2 and Ex. 1–3; Nicholas Aff., at 2–3. "Line 12" policies were assigned risk policies such as the one held by Plaintiff in July and August, 1980. *See* Spohrer Aff. at 1–2. The information explained the coordination of benefits provision. *See* Van Ryan Aff., Ex. 2. The contents of the mailing packages was spot-checked by supervisory personnel to assure the correct documents were included. *Spohrer* Aff., at 2.

Mr. Hess stated at his deposition that, as a result of his accident, his memory is very poor. Hess Dep., at 4. He has no recollection of any of the events surrounding his purchase of insurance in August and September, 1980. *Id.* He does not recall receiving any correspondence in connection with his insurance. *Id.* at 6. Mr. Hess testified that he received a B.A. in business administration, and had worked as an insurance agent for several years. *Id.* at 6–7. Mr. Hess was shown a copy of the coordination of benefits provision at his deposition (Dep. Ex. 1) and the mailing packet communication sent to assigned-risk policyholders. (Dep. Ex. 2). When asked to read and state his understanding of Option A, covering Excess Medical Expense (Dep. Ex. 2), Mr. Hess stated:

A. I am reading that it would be that, "Your health insurance plan would pay first," and it's what your thing says here and, "Then, your auto insurance would take"—pick up on anything unpaid.

Q. And what does that convey to you regarding what your auto insurance would do about the expenses paid by your other plan?

A. There would be no duplication.

Hess Dep. at 10.

Plaintiff, in response to Defendant's Motion, generally reasserts the allegations of the Complaint, with no references to the

record. *See* Plaintiff's Brief, at 1 ("defendant's agent induced Mr. Hess into purchasing a ... policy of insurance"). Plaintiff refers to no statements which would remotely support an allegation of fraudulent inducement or misrepresentation. Thus, there is no issue of fact with respect to these issues.

We turn to Plaintiff's theory that Defendant breached its duty of good faith, and thus, the contract, by failing to explain the effects of the coordination of benefits clause. First, Plaintiff has referred to nothing in the record which supports the allegation that the provision was not explained. In contrast to the affidavits submitted by Allstate, Plaintiff's deposition reveals that he remembers nothing about the facts and circumstances surrounding his purchase of insurance. *See generally,* Dep. of Donald Hess.

The Court of Appeals for the Third Circuit has repeatedly held that "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985) (citing *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981)). Moreover, in *Gans,* the Court held that the burden upon a party opposing the motion is to show a genuine issue of fact exists in light of the appropriate burden of proof. *Gans,* at 343. Thus, in *Gans,* where it was plaintiff's burden to establish, in a legal malpractice action, the standard of care with expert testimony in order to avoid an involuntary dismissal or a directed verdict, plaintiff was required to oppose [the defendant's] factual averments with *expert evidence* demonstrating that the [defendant's] conduct failed to meet the appropriate standard of care. *Id.* In another recent opinion, the Court emphasized "[i]n the vernacular, [a party] may not "lie doggo" in the summary judgment proceedings ..." *Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund,* 763 F.2d 574 (3d Cir.1985), *reh'g and reh'g en banc denied,* (3d Cir. July 3, 1985).

The policy language of the limitation is clear on its face. Plaintiff understood the effect of the provision at his deposition, in spite of his impaired mental condition. *See* Donald Hess Dep. at 10.

█ Under Pennsylvania law, the insurer would only have to prove that the insured received a copy of the policy containing the clear and unambiguous exclusionary language in order to prevail. *See Tonkovic v. State Farm Mutual Automobile Ins. Co.,* 337 Pa.Super. 123, 486 A.2d 512, 514 (1984). Cases after *Standard Venetian Blind* have uniformly held that mere allegations of failure of the insurer to explain a clearly-worded limitation are legally insufficient. *See, e.g. Antanovich v. Allstate Ins. Co.,* — Pa. —, 488 A.2d 571, 575 (1985); *Haegele v. Pennsylvania General Ins. Co.,* 330 Pa.Super. 481, 479 A.2d 1005, 1010 (1984); *Votedian v. General Accident Fire & Life Assurance Corp.,* 330 Pa.Super. 13, 478 A.2d 1324, 1328 (1984) (policy provision for set-off of sums previously paid by persons legally responsible for damages given effect; policy language clear and unambiguous). *See also Blumenschein v. Security Connecticut Life Ins. Co.,* 586 F.Supp. 857, 859 (W.D. Pa.1984) (McCune, J.) (court rules prior to trial that plaintiff could not offer evidence that suicide clause of life insurance policy not explained to the decedent at the time he purchased the policy) *aff'd,* 755 F.2d 916 (3d Cir.1985); *St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's Inc.,* 582 F.Supp. 865, 868–69 (E.D.Pa.1984) (knowledge and understanding of exclusion not material issue of fact sufficient to defeat motion for summary judgment).

Finally, we reject Plaintiff's argument that Allstate was under a fiduciary duty to explain purely hypothetical effects on Plaintiff's other medical insurance policies. Where the limitation is clearly worded and unambiguous, the language of the policy controls. *See Standard Venetian Blind, supra.*

In *Lazovick v. Sun Life Ins. Co.,* 586 F.Supp. 918 (E.D.Pa.1984), an insured purchased a life insurance policy with a stan-

dard suicide clause (the "1979 policy"). When the policy lapsed for nonpayment, the insured bought another policy (the "1980 policy"). The insured committed suicide in 1981. In asserting that the two-year suicide clause of the 1980 policy did not govern, and that the 1979 policy controlled, the insured argued that because the insurer, at the time of the purchase of the 1980 policy, failed to explain a conversion option in the 1979 policy, an implied or constructive conversion was effected because of an alleged breach of fiduciary duty. *Id.* at 922–24. The Court held that, where the conversion provision was conspicuously displayed and unambiguous, the insurance agent was under no fiduciary duty to explain the conversion provision. *Id.* at 924–25. In addition, the Court held that there was nothing in the summary judgment record which raised a genuine issue of fact as to whether the agent acted as the *insured's* agent in the transaction, or in any other confidential relationship with the insured. *Id.* at 924. Rather, the Court held that the uncontested facts showed that the agent was acting on behalf of the insurance company, selling insurance in an arm's length transaction. *Id.* We believe this reasoning applies with equal force here.

 In this action, Plaintiff has never denied making the coordination of benefits election. *See* Stip. ¶ 1,10. Moreover, Plaintiff himself had been an insurance agent in the past. *Id.* ¶ 5. Hess received a premium reduction as a result of the coordination of benefits provision, Id. ¶ 8, and renewed the policy twice. Id. There is no allegation that Allstate has not paid benefits due Plaintiff under the policy. Id. ¶ 16. Under the present law, Plaintiff cannot avoid the clear language of the limitation by showing he did understand the limitation or that it was not explained to him. We find Plaintiff's other arguments without merit.

Finally, we feel compelled to state our feeling that even before *Standard Venetian Blind,* we would have viewed this as a factually tenuous case. Counsel, by

their signature, pursuant to Fed.R.Civ.P. 11, represent that the facts alleged in a complaint are true to the best of their belief at the time of filing. In this case, however unfortunate, Plaintiff had no memory of *any* facts underlying the claims in this action. With no memory of those facts, we find it difficult to discern the factual basis of the Complaint.

CONCLUSION

Because we find that there are no material issues of fact in dispute, and that Defendant is entitled to judgment as a matter of law, we will grant Defendant's Motion for Partial Summary Judgment as to Plaintiff's claim for Medical Expenses.

On the basis of the decision in *Antanovich v. Allstate Ins. Co.,* —— Pa. ——, 488 A.2d 571 (1985), we will enter judgment for Defendant on the Plaintiff's claim as to stacking of work loss benefits.

Because we find no facts to support a claim based on the Pennsylvania Unfair Practices Act, we will enter judgment for Defendant.