FORD LIFE INSURANCE COMPANY
and FORD MOTOR CREDIT COMPANY
*v*. Mrs. Lamar JONES, Jr.

77-143                                         563 S.W. 2d 399

Opinion delivered February 27, 1978
(In Banc)
[Rehearing denied April 17, 1978.]

*Griffin Smith* and *W. R. Nixon, Jr.,* for appellants.

*Holloway & Haddock,* by: *James W. Haddock,* for appellee.

DARRELL HICKMAN, Justice. Lamar Jones, Jr., age thirty-three, purchased a new Ford pick-up truck in 1976 from the Eudora Motor Company, a Ford motor company dealer. The purchase was financed through Ford Motor Credit Company. The salesman, Harold Stokes, sold Jones Ford credit life insurance. Jones died a little over three months later from what was diagnosed as a heart attack caused by diabetes.

Peggy Jones, the widow, did not make payments on the truck and Ford Motor Credit filed suit in Chicot County Circuit Court to recover the vehicle. Peggy Jones, as administratrix of Jones' estate, filed a counterclaim joining Ford Life Insurance, the salesman and Eudora Motor Company claiming damages for $10,000 for misleading representations. Ford Life Insurance Company denied coverage because of a misrepresentation and credited the premium to the Jones' account with Ford Motor Credit because Jones had suffered a heart attack three years before and been under a doctor's care since. The suit against Stokes and Eudora Motor was dismissed.

The case was submitted to a jury and it returned a verdict in favor of Peggy Jones for the amount owed on the vehicle, which was stipulated to be $4,826.86; a 12% statutory penalty; and, a $500.00 attorney's fee was also awarded.

Ford Life and Ford Motor Credit appeal alleging three errors. The last two have merit. Judgment was granted in favor of Peggy Jones for the amount of money due on the truck rather than payment being ordered to Ford Motor Credit Company to satisfy the indebtedness. The insurance policy clearly provided that Ford Motor Credit would be the beneficiary. The judgment of the lower court in this regard was, of course, erroneous. Also, the court awarded statutory penalty and attorney's fee as authorized by Ark. Stat. Ann. § 66-3238 (Repl. 1966). The penalty and attorney's fee may not be awarded unless the exact amount sued for is recovered. *Southwestern Ins. Co.* v. *Camp,* 253 Ark. 886, 489 S.W. 2d 498 (1973). Peggy Jones sued for $10,000 and only recovered the amount owed on the truck. The judgment is reversed in these regards.

The other issue raised on appeal by the appellants has

given us considerable trouble. The appellants argue that it was not disputed that Lamar Jones, Jr. had a heart attack three years before and had been under a doctor's care for several years before the insurance was issued. It is also undisputed that Mr. Jones candidly told the agent for Ford Life, Howard Stokes, who was also the salesman of the vehicle, that he had this heart condition and had been under a doctor's care. Even so, Jones signed a form which can best be described by its reproduction.

It can be readily seen that this policy has only one place for the signature of the insured and that is at the bottom of the form under a heading called "Health Statement." There is nowhere else on the form, nor any other relevant document used by Ford Life, for the insured to answer any questions, make any statements or qualify the language in the insurance policy.

The appellants contend that Jones made an incorrect statement. All Jones did was sign their printed form which says, "I am in good health." We are not unmindful of an Arkansas statute that deals with this matter. Ark. Stat. Ann. § 66-3208 (Repl. 1966) provides:

> All statements in any application for life or disability insurance policy . . . shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either: (a) fraudulent; or (c) the insurer in good faith either would not have issued the policy or contract . . . or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

The appellants argue that this statute applied to this case voids the policy. We disagree.

It was stipulated by the parties that the salesman, Stokes, was a "soliciting agent" for Ford Life (later the appellee's attorney obviously regretted this agreement). We have held before many times that a soliciting agent has no authority to change or alter the provisions of a policy and cannot bind the company. *National Life and Accident Ins. Co.* v. *Broyles,* 197 Ark. 113, 122 S.W. 2d 603 (1939). We do not quarrel with these decisions. We simply do not feel they apply in this case.

Stokes, the salesman, was an employee of Eudora Motor Company, a Ford dealership. A new Ford pick-up was sold to Jones, financed by Ford Credit Company through an application filled out by Stokes, insurance was issued by Ford Life Insurance Company at the request of Stokes, Ford's agent, and Stokes received 35% of the premium paid. It is undisputed that Stokes was told in detail the truth of Jones' condition. There is no evidence whether Stokes relayed the information to Ford Life or not. Stokes did not testify. Ford Life has a policy of not inquiring of an insured's health until a claim is made.

The insurance form of Ford Life Insurance's contract, which is reproduced herein, contains its printed statement that "to the best of my knowledge and belief I am now in good health" with no room for disagreement. Such a statement on such a form should not be used as a defense when, in fact, it is undisputed that there was no misrepresentation or fraudulent statement.

In addition to this defense the company had the defense that its agent is a "soliciting agent" with no legal authority to bind the company. In other words, it does not matter what Jones told Stokes. The agent is given a form which cannot be altered, only signed. Obviously the agent is encouraged to sell insurance, which is Ford Life's business, and is paid a handsome commission. Everyone is satisfied until the death of the insured when it may be learned that he was not "in good health."

Such a situation places an unrealistic burden on an insured which can only result in a decided advantage inuring to the benefit of the company. It leaves room for all sorts of abuses by the agent, the insured and the company.

We limit our decision to the facts in this case. We are not unmindful that a strong argument can be made that we are making a decision that flies in the face of our previous decisions and Ark. Stat. Ann. § 66-3208 (Repl. 1966). However, in the final analysis it is our duty to see that the law enables people to have a fair decision after their day in court and undoubtedly our decision in this case cannot be characterized otherwise.

The judgment is reversed and remanded for proceedings not inconsistent with our decision.

HARRIS, C.J., concurs.

GEORGE ROSE SMITH, FOGLEMAN and BYRD, JJ., dissent.

CARLETON HARRIS, Chief Justice, concurring. I concur with the majority and my views are pretty well expressed in a concurring opinion that I wrote in *National Old Line Insurance Company* v. *People,* 256 Ark. 137, 506 S.W. 2d 128, a case in-

volving credit life insurance. Though I have never done this, I should like to repeat some of the language in that concurring opinion, as follows:

"I have noticed from time to time, in these cases involving credit life insurance that the affirmative statement called for from the applicant is rather general in nature, (I am now in good health) and can, in many instances, be honestly answered by the applicant by 'Yes,' though actually he or she may not be in good health. For instance, perhaps one had open heart surgery a few months ago, or an operation on one of his carotid arteries which was partially blocked, endangering the flow of blood to the brain. He is told by his doctor that the operation was successful, and he genuinely feels that he has no further problems and is in good health. In fact, I know of an individual who underwent open heart surgery, and who is using a pacemaker. He constantly plays tennis and engages in other sports and considers himself as getting along fine, but I doubt seriously that an insurance company would consider him an acceptable risk. This man probably could honestly answer the question by stating that he is in good health, though the prospective insurer would disagree.

It would appear to me that the company selling credit life insurance, in its application form, could follow the practice generally followed by insurance companies selling regular life insurance policies, and propound more specific questions . . . I refer to such questions as whether one has been in the hospital any time during the last three years, consulted a physician within the last three years, ever been told he had high blood pressure, heart disease, diabetes, cancer, etc. On the basis of such answers, the company can intelligently determine whether to consider the man a good insurance risk.[1] If answers are in the negative and are false, this fact should not be difficult to establish. . . .

I can only say if the insurance company selling credit life insurance is willing to take the risk of asking

---

[1]Actually, some companies selling credit life insurance do set out questions relating to specific ailments in the application form.

only general questions, it will just have to also take the chance of perhaps paying benefits to the designee of an applicant who was not in good health when he applied for the policy."

As pointed out in the majority opinion, the evidence is undisputed that the agent Stokes was plainly told that Jones had a heart attack three years earlier and had been seen by his physician since that time; the health situation was discussed. Nonetheless, agent Stokes wrote the policy. I reiterate that specific questions which certainly called for specific answers would have prevented this situation.

GEORGE ROSE SMITH, Justice, dissenting. I cannot agree with the majority's position that this court is entitled to simply ignore the plain language of a controlling statute in order to reach what is considered to be a fair decision. Fairness is a two-way street. Presumably the insurer issued its policy in reliance on the statute and on our decisions giving effect to the statute. To change the rules of the game while play is in progress can hardly be characterized as complete fairness.

The statute provides that incorrect statements in an application for life insurance prevent a recovery if they are material to the acceptance of the risk or if the insurer would not have issued the policy if the true facts had been made known as required by the application for the policy. Ark. Stat. Ann. § 66-3208 (Repl. 1966). Until today's decision we have given effect to the statute by holding that an applicant's false statement of good health in the application for the policy, if material, is a defense within the period of contestability. *Life & Casualty Ins. Co. of Tenn.* v. *Smith,* 245 Ark. 934, 436 S.W. 2d 97 (1969); *Dopson* v. *Metropolitan Life Ins. Co.,* 244 Ark. 659, 426 S.W. 2d 410 (1968). Those decisions, to which there was no dissent, should govern this case. If the court is to overrule its decisions, fair warning should be given.

Under the statute it is immaterial that the applicant orally explained the condition of his health to the insurer's soliciting agent. Such an agent "has no authority to agree upon the terms of the policies or to change or waive those terms, nor can his knowledge be imputed to the company he represents." *Holland* v. *Interstate Fire Ins. Co.,* 229 Ark. 491, 316

S.W. 2d 707 (1958). Here it was the company's practice not to issue a credit life insurance policy unless the insured signed a statement of his good health in the application for the policy. The soliciting agent, who was actually an automobile salesman, had no authority to change or waive that practice. Yet the majority's decision invests him with that authority, contrary to a long line of cases decided by this court.

The judgment should be reversed and the cause dismissed.

FOGLEMAN, J., joins in this opinion.

CONLEY BYRD, Justice, dissenting. The relevant facts in the record are uncontradicted except by the conclusion stated in the majority opinion. The credit life policy was issued on March 17, 1976, and Jones died on June 26, 1976, with a heart attack. In the testimony of Mr. Jones' treating physician, Dr. Allen Gray Talbot testified that in April of 1973, Mr. Lamar Jones, Jr., had an acute myocardial infarction. He treated Jones periodically from April of 1973, until the time of his death in June, 1976. Jones was suffering from heart disease. Jones saw Dr. Talbot January 12, 1976, April 5, 1976, April 19, 1976 and May 31, 1976. Jones had nitroglycerin tablets and anti-coagulant pills. Jones had angina pectoris which is heart pains and one of the symptoms.

Appellee, Mrs. Lamar Jones, Jr., testified that she was present during all of the conversations with Mr. Stokes, the soliciting agent, and that she was also there when the contract was signed on March 17, 1976. She testified that she and her husband advised Mr. Stokes truthfully about Mr. Jones' past health situation, and that Stokes was aware of Jones' past health when he wrote the policy. Mrs. Jones also admitted that notwithstanding their knowledge of Mr. Jones' past health, Jones then signed the policy health statement ". . . that to the Best of My Knowledge and Belief I am Now in Good Health. . . ."

Notwithstanding the foregoing uncontradicted testimony, the majority makes the following assertion:

"The insurance form of Ford Life Insurance's Contract, which is reproduced herein, contains its printed statement that 'to the best of my knowledge and belief I am now in good health' with no room for disagreement. Such a statement on such a form should not be used as a defense to liability *when, in fact, it is undisputed that there was no misrepresentation or fraudulent statement.*" (Italics mine).

Under Ark. Stat. Ann. § 66-3208 (Repl. 1966), it was not necessary for Ford Life Insurance Company to show fraud, it was only necessary to show that the insured had made either an incorrect or material misrepresentation which materially affected the risk. Contracts are a two way street and require some integrity on the part of both parties. Can an insured in dealing with a soliciting agent, who has no authority to change or modify the policy, rely upon the statement of such agent when the insured signs an erroneous good health provision upon which the company is supposed to act? The cases hold that an insured cannot become a participant with an agent in making an erroneous or incorrect statement and retain the benefits of the policy. See *Theros* v. *Metropolitan Life Insurance Company,* 17 Utah 2d 205, 407 P. 2d 685 (1965) and *Norwick* v. *United Security Life Company,* 82 S.D. 640, 152 N.W. 2d 439 (1967). In the last mentioned case it was pointed out ". . . the general law relative to insurance contracts requires good faith in making answers to questions in an application and if applicant discovers that statements made therein were not based upon facts detailed by him to the agent, it becomes his duty to make known the facts to the insurer." In *Theros* v. *Metropolitan Life Insurance Company, supra,* the Supreme Court of Utah stated:

"In order to defeat recovery on an insurance policy because of misrepresentation in the application, the misrepresentations must have been made with an intent to deceive and defraud the insurance company. However, such an intent may be inferred where the applicant knowingly misrepresents facts which he knows would influence the insurer in accepting or rejecting the risk. The same rule should apply where the applicant knowingly or with constructive knowledge, permits such

misrepresentation to be submitted to the insurance company."

See also *Williams* v. *Black Hills Benefit Life Ass'n.*, 70 S.D. 611, 19 N.W. 2d 769 (1945), where it was stated:

"It is clear that if the applicant for insurance had falsely answered the questions above set out, and the falsity of such answers was not known to the agent, such false answers would have rendered the policy void. *Hohenthaner* v. *Mutual Life Ins. Co.*, 62 S.D. 8, 250 N.W. 370; *Life Benefit, Inc.* v. *Forbragd*, 68 S.D. 38, 298 N.W. 259. However, respondent contends that the facts of the present case estop the defendant from asserting the invalidity of the policy. Respondent bases this contention upon the holdings of this court to the effect that a soliciting agent of a mutual benefit association is in effect the general agent of the association and the agent's knowledge of any fact that might increase the risk is the knowledge of the company. *Thomas et al* v. *Modern Brotherhood of America*, 25 S.D. 632, 127 N.W. 572; *Fosmark* v. *Equitable Fire Ass'n.*, 23 S.D. 102, 120 N.W. 777. But the rule upon which respondent relies should not be without limitation. The rule, we believe, contemplates the existence of entire good faith on the part of the insured, and the absence of circumstances that would impute to him knowledge that the insurer would be deceived by the application submitted. 'An agent can never have authority, either actual or ostensible, to do an act which is, and is known or suspected by the person with whom he deals to be, a fraud on the principal.' SDC 3.0208. *Frazier* v. *Hartford Fire Ins. Co.*, 51 S.D. 40, 211 N.W. 973."

In view of some statements in the majority opinion such as "Ford Life has a policy of not inquiring of an insured's health until a claim is made" it appears to me that the majority are more interested in the end result of this litigation than in a fair application of the law. Since Ark. Stat. Ann. § 66-3809 (Repl. 1966), requires a delivery of a certificate of insurance at the time the indebtedness is incurred or within 30 days thereafter with the insurance being retroactive to the date of the indebtedness, a credit life insurer, as a practical

matter, has to rely upon the application for the issuance of its policy.

The suggestion in the majority opinion that after stipulating to Stokes' capacity as a *"soliciting agent" for Ford Life (later the appellee's attorney obviously regretted this agreement)* (emphasis mine), ignores the fact that insurance agents are licensed by the Insurance Commissioner, Ark. Stat. Ann. § 66-2815 (Repl. 1966). Furthermore by Ark. Stat. Ann. § 66-2823 it is specifically provided that "(4) a solicitor shall not have authority to bind risks or countersign policies." If the conduct of the soliciting agent here does not fall within the holding of our prior cases that a soliciting agent has no authority to change or alter the provisions of a policy, it would appear the appellant is entitled to a better explanation than "We simply do not feel they apply in this case." I dare say that such a statement can be made with respect to any prior decision but without some elucidation, the citizens of this State have no warning when the court will just as abruptly say that any other matter will not be controlled by the prior decisions. I plead with the majority to elucidate further so that the citizens of our State will know how to conduct their business or what law the legislature must enact to make their wishes known.

Finally the majority without citing a single previous case makes the bold statement *"We are not unmindful that a strong argument can be made that we are making a decision that flies in the face of our previous decisions and Ark. Stat. Ann. § 66-3208 (Repl. 1966)."* I humbly submit that when the majority recognizes that its decision "flies in the face" of a valid statute that it then owes to the losing litigant and the public in general a detailed explanation of why and how the majority has the authority to render a decision contrary to the established law — this duty the majority brushes aside with the mere assertion ". . . that the law enables people to have a fair decision after their day in court and undoubtedly our decision in this case cannot be characterized otherwise." Can the majority ignore a statute to reach a result and still logically proclaim that its decision is fair? Is the majority characterizing its decision as fair merely because the credit life insurer loses and the insured wins?

For the reasons herein stated, I respectfully dissent.

FOGLEMAN, J., joins in this opinion.