**Marion T. STUCKEY and Geraldine Stuckey, Plaintiff,**

v.

**TIME INSURANCE COMPANY, Defendant.**

**No. LR–C–86–709.**

United States District Court,
E.D. Arkansas, W.D.

Sept. 10, 1987.

John F. Lovell, Jr., Benton, Ark., for plaintiff.

David Hodges, Little Rock, Ark., for defendant.

### MEMORANDUM OPINION

ROY, District Judge.

The defendant Time Insurance Company issued a policy of medical pay insurance, which became effective February 19, 1986, insuring the plaintiffs, Marion T. Stuckey and Geraldine Stuckey. Subsequent to the issuance of the policy, plaintiff Marion Stuckey suffered a cerebral hemorrhage, and filed a claim with defendant insurance company. Defendant rescinded the policy, contending that Marion Stuckey had a pre-existing condition of which they were unaware, that plaintiff misrepresented his physical condition to the defendant, and that had defendant known all the facts, the policy would not have been issued. Defendant returned the premiums to the plaintiff. Plaintiffs have brought suit to recover under the policy.

Byron V. Reeves, the individual responsible for obtaining the information from the plaintiffs when they applied for the insurance, went to the plaintiffs' home and filled out the application for insurance while Mrs. Stuckey provided the information. Mr. Stuckey was unable to be there,

but his wife, Geraldine Stuckey, answered the questions on behalf of herself and her husband. The Stuckeys' adult son was also present while Mr. Reeves was questioning Mrs. Stuckey.

As Mr. Reeves was questioning Mrs. Stuckey, he came to question 15(b) which asks:

To the best of your knowledge and belief has any person to be insured within the last 10 years:

15. Had any indication, diagnosis or treatment of:

(b) The heart or circulatory system including high blood pressure, murmur, or chest pain, irregular heartbeat or varicose veins or phlebitis?

The testimony varies as to what was told Mr. Reeves at this point. Mrs. Stuckey testified that in response to 15(b) she told Mr. Reeves that her husband had developed high blood pressure in 1985 and saw a Dr. Martindale. Mr. Reeves then came to question 19, which asks:

To the best of your knowledge and belief has any person to be insured within the last ten years:

19. Currently taking medication or medical treatment of any type?

Mrs. Stuckey then told Mr. Reeves her husband was taking medication for high blood pressure, and that he had not had any problem with blood pressure since he began taking his medication. When Mr. Reeves asked Mrs. Stuckey about the medication, Mrs. Stuckey showed Mr. Reeves the bottle of medicine. She stated that Mr. Reeves looked at it and said "This is not enough to affect anything." This testimony was corroborated by Jeffrey Stuckey, the plaintiffs' son, who was present in the room when the questioning took place. Mr. Reeves then marked "No" in response to questions 15(b) and 19. Toward the end of the application, Mr. Reeves did write on the application that Dr. Joe Martindale checked blood pressure in 1985 and there was no problem. After completing the application, Mrs. Stuckey gave Mr. Reeves a premium check and Mr. Reeves advised her that unless she heard from him in ten days, they would be covered. When Mrs. Stuck-

ey subsequently received the policy, along with a copy of the application, her husband was in the hospital, after suffering from a cerebral hemorrhage on the morning of March 16, 1986. Mr. Stuckey was taken to the hospital, treated, and incurred bills for said treatment. Subsequent to the plaintiffs' filing of a claim with defendant insurance company, defendant began investigating the facts, and after obtaining the records from Dr. Martindale, defendant rescinded the policy as of the issuance date on February 19, 1986. Defendant contends that a cerebral hemorrhage is a condition related to high blood pressure, and had they known about plaintiff's medical history, which included problems with high blood pressure, the policy would not have been issued.

Byron Reeves testified that he recorded the information given to him correctly, and that when answering 15(b), Mrs. Stuckey did not tell him about her husband's high blood pressure or about the medicine. Later when he asked her question number 21, which asks who their family doctor was, she stated Dr. Martindale. Mr. Reeves said that then Mrs. Stuckey said her husband had gone to Dr. Martindale in 1985 for high blood pressure, but that Mrs. Stuckey didn't tell him her husband was taking medication. He stated that Mrs. Stuckey told him to put "No" by each of the boxes. Mr. Reeves admitted that he uses defendant's stationery and envelopes.

Defendant Time Insurance Company contends that there is a fact question as to whether plaintiffs disclosed to Byron Reeves the fact that Marion T. Stuckey was undergoing treatment for high blood pressure. Even if this fact question is resolved against them, it is contended by defendant that plaintiff should not recover for three reasons: (1) Notice to a soliciting agent is not notice to the insurance company and a soliciting agent has no authority to waive policy requirements and this knowledge cannot be imputed to the insurer; (2) Byron Reeves was a soliciting agent; and (3) the agency agreement between Time Insurance Company and Byron Reeves contractually provides that the ac-

tions or knowledge of Byron Reeves is not imputed to the company.

The Court has done extensive research on the issues involved herein and finds that there is considerable, persuasive authority for finding in favor of the plaintiff.

Under Ark.Stat.Ann. § 66–3208, an insurer can establish an affirmative defense to recovery under a policy by showing that there has been a misrepresentation, omission, concealment of facts, or incorrect statement in the insurance application. This will not prevent recovery under a policy, however, unless it is (a) fraudulent, (b) material to the acceptance of the risk, or to the hazard assumed by the insurer, or (c) the insurer in good faith would not have issued the policy at all or would have changed the terms of the policy if the true facts had been made known to it as required by the application. *Jackson v. Prudential Insurance Company of America*, 736 F.2d 450 (8th Cir.1984).

An excellent discussion on misrepresentations in the procurement of insurance in Arkansas is found in Adams, *Misrepresentation in Procurement of Insurance: The Arkansas Law*, 4 UALR L.J. 17 (1981). In that article, Professor Adams discusses relevant Arkansas decisions rendered prior and subsequent to the passage of the Arkansas Insurance Code, Ark.Stat.Ann. §§ 66–2001 to –4920 (1980). An analysis of cases involving issues similar to the ones in the present case appears in his discussion of waiver and estoppel as they relate to Section 275 of the Insurance Code.[1] Professor Adams states that Section 275 of the Insurance Code does not appear to preclude resort to waiver and estoppel, and that the pre-Code cases invoking these doctrines should remain viable precedents.

*Continental Casualty Co. v. Campbell* supports this view. The insured under a health and accident insurance policy testified that he told the insurer's soliciting agent that he had been hospitalized for a short time the previous year (1960) and had been told by his physician that he had Asian flu, but that the agent had replied that such hospitalization was in-significant and the agent had filled in a "no" answer to an application question asking whether the applicant had been medically treated or hospitalized within the past five years. The insurer introduced evidence that the physician who treated the insured in 1960 had diagnosed fibrocystic disease of the left lung and advised the insured of the diagnosis. Upholding a judgment in favor of the insured, the supreme court relied on *McKenzie* for the principle that the insurer cannot complain of the applicant's failure to reveal a prior ailment when the applicant has disclosed information which would enable the insurer to learn of the illness by its own investigation. The court cited *Southern National Insurance Co. v. Heggie*, a pre-Code case, as authority for treating the knowledge of the insurer's soliciting agent as the knowledge of the company and as a basis for estoppel against the insurer to set up the falsity of the answer in the application as a defense. (footnotes omitted). *Id.* at 87.

Professor Adams also discusses the case of *Ford Life Insurance Co. v. Jones*, 262 Ark. 881, 563 S.W.2d 399 (1978). In *Jones*, Lamar Jones, the buyer of a pick-up truck, purchased through the truck salesman a policy of credit life insurance from Ford Life Insurance Company. Jones told the agent, who was also the salesman of the vehicle, that he had a heart condition (suffered a heart attack three years previously) and had been under a doctor's care. However, he then signed the insurer's printed form, which served both as application for and certificate of insurance, his signature being made beneath a bold-face "Health Statement" which declared that he was, to the best of his knowledge and belief, in good health. It was stipulated by the parties that the salesman was a "soliciting agent" for Ford Life. The Court recognized the general rule that a soliciting agent has no authority to change or alter the provisions of a policy and cannot bind the company. The Court simply did not

1. Ark.Stat.Ann. § 66–3208.

feel the principle to be applicable in the case. The Court held:

> The insurance form of Ford Life Insurance's contract, which is reproduced herein, contains its printed statement that "to the best of my knowledge and belief I am now in good health" with no room for disagreement. Such a statement on such a form should not be used as a defense to liability when, in fact, it is undisputed that there was no misrepresentation or fraudulent statement.
>
> In addition to this defense the company had the defense that its agent is a "soliciting agent" with no legal authority to bind the company. In other words, it does not matter what Jones told Stokes. The agent is given a form which cannot be altered, only signed. Obviously the agent is encouraged to sell insurance, which is Ford Life's business, and paid a handsome coninission. Everyone is satisfied until the death of the insured when it may be learned that he was not "in good health."
>
> Such a situation places an unrealistic burden on an insured which can only result in a decided advantage enuring to the benefit of the company. It leaves room for all sorts of abuses by the agent, the insured and the company.
>
> We limit our decision to the facts in this case. We are not unmindful that a strong argument can be made that we are making a decision that flies in the face of our previous decisions and Ark. Stat.Ann. § 66–3208 (Repl.1966). However, in the final analysis it is our duty to see that the law enables people to have a fair decision after their day in court and undoubtedly our decision in this case cannot be characterized otherwise.

*Id.,* 262 Ark. at 866, 563 S.W.2d at 402.

The defendant relies heavily on the Eighth Circuit case of *Jackson v. Prudential Insurance Company of America,* 736 F.2d 450 (8th Cir.1984). In that case, the insurance application contained the following question:

> 19. Has any person named in 1a or 6, within the last 12 months:

> a. been treated by a doctor for or had a known heart attack, stroke or cancer other than of the skin?
>
> b. had an electrocardiogram for chest pain or for any other physical complaint, or taken medication for high blood pressure?

The agent testified that the insured answered question 19.b as follows:

"As it is written there it would have to be no. I have had an electrocardiogram, but it was in a routine physical." The Court stated:

> ... It was undisputed that Mr. Jackson answered "no" when asked whether or not he had had an electro-cardiogram for chest pain or for any other physical complaint. Both Dr. Lynch and Mrs. Jackson, however, testified that physical discomfort prompted Mr. Jackson's visit to Dr. Lynch on August 31, 1981. Because of Mr. Jackson's complaints of physical discomfort, Dr. Lynch administered both resting and stress electrocardiograms. Mrs. Jackson argues that her husband thought he had an ulcer and therefore was not having an electro-cardiogram for chest pain. But even if Mr. Jackson believed that his physical discomfort was due to an ulcer, this belief would not change the fact that he incorrectly answered question 19.b. on the application." (citation omitted.)

The Court in *Jackson* further analyzes as follows:

> The District Court's opinion seems to suggest that Mr. Hartley's knowledge was relevant to two separate questions—the existence of an incorrect statement and the existence of grounds for estoppel. *Mr. Hartley's knowledge, however, would have been relevant to the question of the existence of an incorrect statement only if his accurate recordation of Mr. Jackson's answers had been disputed.* No one disputes, however, that Mr. Hartley correctly recorded Mr. Jackson's answers. The remaining inquiry is whether Prudential may be estopped to deny coverage because Mr.

Hartley had other information that affected the risk.

\* \* \* \* \* \*

In the present case, question 19.b., incorrectly answered by Mr. Jackson, was very specific and entirely factual. It did not call for the applicant's opinion of his health. In these circumstances, Arkansas law provides no support for an estoppel against the insurer based upon the knowledge of the soliciting agent, *when the agent has recorded correctly the applicant's answers to the questions on the application.* (emphasis added).

*Id.,* 736 F.2d at 454, 456. The Court in *Jackson* found that Arkansas law does not support an estoppel argument in that case, citing the general rule that notice to a soliciting agent is not notice to the insurance company; and that a soliciting agent has no authority to waive policy requirements and his knowledge cannot be imputed to the insurer. However, the Court in *Jackson* recognized the line of cases in Arkansas wherein it was held that the insurance company was bound by notice to the soliciting agent where the agent incorrectly recorded the applicant's answers on the application, citing *Reliable Insurance Co. v. Elby,* 247 Ark. 514, 446 S.W.2d 215 (1969); *Southern National Insurance Co. v. Heggie,* 206 Ark. 196, 174 S.W.2d 931 (1943).

These cases turn on the question of a soliciting agent's duty, pursuant to his relationship with the company, to fill out insurance applications correctly. *See, e.g., DeSoto Life Insurance Co. v. Johnson,* 208 Ark. 795, 187 S.W.2d 883 (1945). But as we earlier noted, no one disputes that Mr. Hartley correctly recorded Mr. Jackson's answer to question 19.b.

*Jackson,* 736 F.2d at 454–455.

In the present case, the agreement between Mr. Reeves and defendant insurance company states that Mr. Reeves is responsible for asking all questions and "correctly recording all answers on applications for insurance ..." This Mr. Reeves failed to do.

Also in *Jackson,* the Eighth Circuit discussed at length the Arkansas Supreme Court's holding in *Ford Life Insurance Co. v. Jones, supra,* with respect to the issue of the soliciting agent's lack of authority to bind the insurance company. The Court noted:

"Although the Arkansas Supreme Court decided in favor of the insured, it did not rely on the line of cases that estop the insurance company when the soliciting agent has incorrectly written the answers on the application. Instead, the court relied on principles of fairness and wrote narrowly, limiting the decision to the facts of the case."

*Jackson,* 736 F.2d at 455.

The Court in *Jackson* declined to apply *Jones* to their facts, stating that even in *Jones* the Arkansas Supreme Court expressly recognized the general rule that notice to the soliciting agent is not notice to the insurance company. They further noted that the court in *Jones* limited its decision to the facts in the case; and finally, the facts of the case were particularly appealing because of the vagueness inherent in asserting that one is in "good health."

This Court finds that the holding in *Jackson* does not require a finding in favor of the defendant. On the contrary, the Court in *Jackson* recognized the line of cases relied upon today. Furthermore, the facts in *Jackson* are distinguishable.

■ In the case now before the Court Mrs. Stuckey told Mr. Reeves that her husband had been to see a doctor in 1985, and was taking medication for his blood pressure. In fact, she presented Mr. Reeves with the bottle of pills.[2] She did all that any person would be expected to do under the circumstances. It was Mr. Reeves who determined that the medication didn't "affect anything." It is further apparent from the application that the defendant

<hr/>

2. The Court finds Mrs. Stuckey's and Jeffrey Stuckey's testimony on this issue to be the most credible. In so finding, the Court does not infer that Mr. Reeves deliberately made a misrepresentation to the Court. The Court merely finds the memory of Mrs. Stuckey and her son to be superior.

was on notice of the fact that Mr. Stuckey had seen a doctor for high blood pressure in 1985, because this is noted on the application. It is therefore clear that in the present case, unlike the facts in *Jackson,* the insured did give the agent the information, and the agent incorrectly recorded the answer.

■ To allow an insurance company to be shielded from liability in a case such as this leaves room for all sorts of abuses by the agent, the insured and the company. An insurance company would be able to shield itself from liability by devising a relationship with an agent whereby the insurance company reaps the benefits of receiving premiums but shields itself from liability when problems arise.

The plaintiffs' discussion in their brief relating to causation presupposes a misrepresentation was made. Since this Court finds plaintiff gave accurate information, and no misrepresentation was made, the Court need not address the causation requirement.

With respect to the statutory penalty and attorney's fees, Ark.Stat.Ann. § 66–3238 allows for the recovery of 12% penalty and attorney's fees. This section has been held to be penal in nature, and the plaintiff must recover the exact amount claimed in order to collect the penalty and attorney's fees. *Cato v. Arkansas Municipal League Municipal Health Benefit Fund,* 285 Ark. 419, 688 S.W.2d 720 (1985).

■ In the present case, John Hildebrand, the manager of the underwriting department for Time Insurance Company, testified that if they were required to pay plaintiffs' claim, the amount to pay would be $19,473.51. At the end of the trial, plaintiffs moved to amend their pleadings to conform to the proof, and said motion was granted. The Court finds it appropriate to award the 12% penalty and attorney's fees. The parties are directed to attempt to agree upon a figure representing reasonable attorney's fees by no later than September 15, 1987. If agreement is impossible, plaintiff is directed to submit to the court by September 20, 1987, a petition for attorney's fees, with the appropriate

affidavits and documentation attached, and defendant will have ten days thereafter to respond to the petition. Once resolved, a judgment will be prepared.

Based upon the foregoing, the Court finds in favor of the plaintiffs. A judgment will be entered in accordance with this opinion after proper documentation in support of attorney's fees is presented.