UNITED STATES of America, Appellee,

v.

Douglas THARP, a/k/a Douglas G. Tharp, Vernon Tharp, Appellants.

No. 91–2580.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1992.

Decided Aug. 20, 1992.

Donald P. Raney, Searcy, Ark., argued, for appellants.

Richard M. Pence, Jr., Little Rock, Ark., argued (Charles A. Banks and Richard M. Pence, Jr., on the brief), for appellee.

Before McMILLIAN, LOKEN and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Vernon Tharp and Douglas Tharp (Tharps) appeal from an order entered in the United States District Court[1] for the Eastern District of Arkansas granting summary judgment in favor of the Small Business Administration (SBA), an agency of the United States. *United States v. Tharp Bros.*, Civil No. LR–C–88–632, 1992 WL 367962 (E.D.Ark. June 10, 1991). For reversal, the Tharps argue that the district court erred in granting summary judgment in favor of SBA. For the reasons discussed below, we affirm the order of the district court.

BACKGROUND

In February 1981, the Tharps' business, Tharp Brothers, Inc. (TBI), obtained a $500,000.00 loan from the SBA to finance the operation of its poultry processing plant. To secure the loan, TBI executed a promissory note, a mortgage and a security agreement in favor of the SBA. Additionally, Vernon and Douglas Tharp each signed a separate personal guaranty agree-

---

1. The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas.

ment, SBA Form 148, as further security for the SBA loan to TBI.

The guaranty agreements are identical (except with respect to the guarantor) and provide that the guarantor "unconditionally guarantees" payment of the promissory notes of the principal obligor, TBI. It also granted to SBA:

full power, in its uncontrolled discretion and without notice to the undersigned [guarantor] ... to deal in any manner with the Liabilities [note and all sums due under the note] and the collateral, including, but without limiting the generality of the foregoing, the following powers:

(a) To modify or otherwise change any terms of all or any part of the Liabilities or the rate of interest thereon (but not to increase the principal amount of the note of the Debtor [TBI] to Lender [SBA]), to grant any extension or renewal thereof and any other indulgence with respect thereto, and to effect any release, compromise or settlement with respect thereto;

....

(d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether or not the collateral, if any, received by Lender [SBA] upon any such substitution, exchange, or release shall be of the same or of a different character or value than the collateral surrendered by Lender [SBA].

The guaranty agreements further provide that the obligations of the guarantors shall not be released or in any way affected because of any action SBA may take or omit to take under the powers enumerated in the guaranty agreements. Under the terms of the guaranty agreements, SBA was required neither to pursue nor exhaust any of its rights or remedies against TBI with respect to payment of the note or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral securing the note.

TBI ceased operations in 1985. In March 1985 TBI filed a Chapter 11 Bankruptcy Petition listing SBA as a secured creditor, and in 1987 TBI submitted a proposed Chapter 11 Plan of Liquidation. The plan valued the collateral at the same amount as the debt owed SBA and proposed to transfer the real and personal property collateral to SBA and to extinguish TBI's debt owed SBA. Having no objection to the bankruptcy plan for reorganization, the SBA filed its ballot of acceptance and the plan was confirmed by the bankruptcy court. *In re Tharp Bros.*, No. LR 85–371F (Bankr.W.D.Ark. Apr. 22, 1987) (order).

After TBI conveyed its real and personal property collateral securing the loan to SBA by warranty deed, SBA sold the collateral at public auction and received $65,-253.73 for the personal property and $16,-555.54 for the real property. The warranty deed conveying the real property stated that the property was conveyed in consideration of the extinguishment of all indebtedness owed by TBI to SBA. Thereafter, in the present suit, SBA moved to dismiss its foreclosure claims and its other claims against TBI and moved for summary judgment against the Tharps, contending that the Tharps were personally liable for the balance of the indebtedness remaining on the loan because of their separate guaranty agreements. The Tharps opposed the motion, arguing that the bankruptcy plan extinguished their obligations or, alternatively, that SBA expressly agreed to release them from their obligations under their guaranty agreements by agreeing to the bankruptcy plan.

The district court agreed with the SBA and granted its motion for summary judgment, holding that the release of TBI in the bankruptcy proceedings did not relieve the Tharps of their obligation under the guaranty agreements. Slip op. at 11. The Tharps appeal.

## DISCUSSION

■ We review a grant of summary judgment de novo. *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir.1992). The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

■ Federal law governs the interpretation of the guaranty agreements. *See United States v. Conrad Publishing Co.,* 589 F.2d 949, 953 (8th Cir.1979) (federal law rather than that of state law controls the rights and obligations of the parties); *accord Victory Highway Village, Inc. v. Weaver,* 634 F.2d 1099, 1101 (8th Cir.1980).

■ The question here is whether the discharge of TBI under the bankruptcy plan also relieved the Tharps of their obligations under their separate guaranty agreements. The Tharps argue that the transfer of the collateral to the SBA by TBI pursuant to the bankruptcy plan extinguished their obligations under the guaranty agreements. They do not contend, however, that the mere discharge of TBI in bankruptcy released them from liability. Rather, the Tharps argue that the terms of the bankruptcy plan,[2] approved by the SBA, fully satisfied and extinguished any debt due SBA, and therefore, any obligations under the guaranty agreements. The Tharps argue that because the plan in essence set forth that the collateral held by TBI was equal in value to the indebtedness that TBI owed SBA, the collateral transferred by TBI to SBA extinguished the debt and satisfied in full all the monetary claims of SBA. Therefore, the Tharps contend that the agreement by SBA could not and should not be considered anything less than a full settlement of all their obligations.

The Tharps also take issue with the district court's reliance on *United States v. Beardslee,* 562 F.2d 1016 (6th Cir.1977) *(Beardslee), cert. denied,* 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128 (1978) to support its findings that the guaranty in SBA's Form 148 is absolute and conditional. They argue that there is a condition precedent to the absolute and unconditional nature of the guaranty and that the condition precedent is the existence of an indebtedness owed to the SBA. They assert that the bankruptcy plan not merely discharged the debt TBI owed to SBA, but also proposed an agreement which was accepted by SBA, whereby SBA received the real and personal property of TBI valued in the amount of the indebtedness owed. Thus, the Tharps argue the bankruptcy plan extinguished the debt and satisfied in full SBA's monetary claim. They argue there is no deficiency.

Finally, the Tharps contend that the SBA Form 148 provides that it is also subject to the provisions of any agreement between the debtor (TBI) or any other party (the Tharps) and the lender (SBA), which can limit the absolute and conditional "full powers" of the guaranty agreement. This circuit has never directly addressed this issue.

The SBA argues that the language of the guaranty agreements quoted above provides an unconditional guaranty which is not affected by any action SBA may take.[3]

We agree. The Sixth Circuit in *Beardslee* determined the effect of a principal obligor's (Beardslee Lumber Company) release on the guarantors' (the Beardslees) obligations under SBA Form 148. In *Beardslee,* the SBA provided loans for a lumber company owned by the Beardslees.

---

**2.** The Plan stated:

    (1) The Debtor objects to [SBA's claim for $4,472,425.25] because SBA is fully secured by the collateral securing the amount due. *Debtor will convey collateral back to SBA in full satisfaction pursuant to its confirmed plan.*

    (2) The debtor objections should be sustained for the above reasons.

    IT IS THEREFORE ORDERED that SBA participate in distribution only as provided in the debtors confirmed plan by receipt of distribution of real and personal property *in full satisfaction of its monetary claim.*

*In re Tharp Bros.,* No. LR 85–371F (Bankr. W.D.Ark. June 24, 1987) (order) (emphasis added).

**3.** The SBA also makes several other alternative arguments which we need not address.

The lumber company was the principal obligor on the notes, and the notes were secured by real estate mortgages and security agreements covering the lumber company's machinery and equipment. As in the present case, the Beardslees also signed personal guaranty agreements on SBA Form 148. *Id.* at 1017. The lumber company filed a Chapter 11 bankruptcy petition. As a result of negotiations between the parties, the lumber company transferred its property and the underlying notes and obligations to a third party operator of the business. The third party defaulted on the notes and the SBA sued to foreclose and obtain a deficiency judgment. *Id.* at 1017–18. The parties settled the lawsuit, and, pursuant to that settlement, the SBA discharged the mortgages and security agreements against the third party operator and the lumber company. The SBA then sued the Beardslees under the original guaranty agreements to collect a deficiency judgment. *Id.* at 1018.

Relying on the language of the SBA Form 148, the *Beardslee* court held that the release of the principal obligor did not relieve the Beardslees of their obligation under the guaranty agreements. The court stated that:

> [W]e find the language of SBA Form 148 clear and unambiguous on its face, and therefore, interpretation of the agreement is a question of law.
>
> Although the Guaranty Agreements signed by defendants indicate defendants are acting as guarantors of the principal debt, there is nothing from this fact alone that would preclude these appellants from being held principally liable on the promissory notes.
>
> . . . .
>
> ... Based on a reasonable interpretation of the clear and unambiguous language contained in Form 148, we conclude that as a matter of federal law the release of the principal debtor did not discharge the obligation of the guarantors under this agreement.
>
> . . . .
>
> ... The discharge agreement between the guarantee (SBA) and the principal

obligor in the instant case in no way was intended to limit the "full power" of the guarantee under the Guaranty Agreement; rather, the agreement between the debtor and SBA was in effectuation of the guarantee's "full power." It would be an anomalous result if a debtor's agreement in effectuation of the Guaranty Agreement served to limit the guarantee's rights under the same Guaranty Agreement. Such an interpretation is not reasonable nor could it have been within the intention of the parties involved.

*Id.* at 1022–24 (citations omitted).

The law of this circuit is similar. In *Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71 (D.Minn.1979) *(Victory Highway Village)*, aff'd, 634 F.2d 1099 (8th Cir.1980), the district court provided this commentary on SBA Form 148:

> Here, a reading of the language contained in the guaranty agreement clearly indicates that the guaranty is absolute and unconditional, and that [the guarantors] are liable even if the principal debtor is discharged from any or all of its liability....
>
> . . . .
>
> The language contained in the guaranty clearly provides for the unconditional liability of the guarantors, regardless of whether or not the obligation of the principal debtor has been released, discharged or altered in any manner. Other courts have construed the SBA form of guaranty to be absolute and unconditional in nature.

*Id.* at 76 (citations omitted).

We agree with the *Beardslee* and *Victory Highway Village* decisions and adopt their reasoning, and hold that the discharge of TBI in bankruptcy in no way relieved the Tharps of their obligations under the guaranty agreements.

The Tharps attempt to distinguish *Beardslee* and *Victory Highway Village* by arguing that there is a distinction between the words "fully paid, satisfied and discharged" and "released" and the word "extinguish" as used in the TBI bankruptcy plan. The *Victory Highway Village*

court directly addressed and rejected this argument:

> The essence of [the guarantors'] argument is that there is no debt due and owing from the principal debtor since the obligation was "extinguished." As a result, the condition precedent has not been satisfied and the guarantors should not be liable.
>
> . . . .
>
> ... While it is true that the court in [the declaratory judgment action brought by the principal obligor mortgagor] stated in a footnote that the mortgagee's purchase at the foreclosure sale "extinguished" [the guarantors'] indebtedness under the mortgage, it is obvious that the court used the word "extinguished" in a general sense (as a synonym for the words discharged or released) and did not intend the word "extinguished" to be the central holding of the case. It is also clear that the court did not intend that the "extinguishment" affect any party other than the mortgagor ... and the SBA, or any obligation other than that owed by [the mortgagor] to the SBA. Indeed, the present plaintiff guarantors were not even parties to the [mortgagor's] case and, as a result, the question of the liability of the guarantors was simply not an issue in that case. The only issue before the court in [the mortgagor's case] was the liability of the mortgagors....
>
> [The guarantors'] argument is really based more upon semantics than it is upon substance. Whether the obligation of the mortgagor ... was released, discharged, or "extinguished" is really of no significance since the [guarantors] unconditionally guaranteed their obligation regardless of what happened to the obligation owed by the mortgagor....

*Id.* at 76-77.

■ We are aware of the general rule that the release or discharge of the principal obligor also discharges the guarantor unless the right of recourse against the guarantor is expressly reserved in the guaranty agreement. Here, however, the language contained in the guaranty agreement clearly provides for the unconditional liability of the guarantors, regardless of whether the obligation of the principal debtor has been released, discharged or altered in any manner. The term "extinguishment," as used in the bankruptcy plan, was not intended to affect any party other than TBI and the SBA, nor any obligation other than that owed by TBI to the SBA.

Accordingly, we hold based on a reasonable interpretation of the clear and unambiguous language contained in SBA Form 148, that as a matter of federal law the release of the principal debtor did not discharge the obligation of the guarantors under their guaranty agreements.

Accordingly, we affirm the judgment of the district court.