**Kevin Michael HALL, Plaintiff,**

v.

**MODERN WOODMEN OF AMERICA, Defendant.**

**MODERN WOODMEN OF AMERICA, Third-party plaintiff,**

v.

**Michael A. ESCH, Third-party defendant.**

**No. LR–C–93–773.**

United States District Court, E.D. Arkansas, Western Division.

Dec. 2, 1994.

Johnson D. Ogles, Jacksonville, AR, for plaintiff.

T. Scott Clevenger and Marshall S. Ney, Mitchell, Williams, Selig, Little Rock, AR, for defendant and third-party plaintiff.

Dan F. Bufford, Laser, Sharp, Wilson, Bufford & Watts, Little Rock, AR, for third-party defendant.

## ORDER

ROY, District Judge.

Now before the Court is the motion of defendant Modern Woodmen of America for summary judgment. After carefully considering all of the pleadings, the Court has concluded that the motion should be granted and judgment entered against the plaintiff.

## I.

The pertinent facts of this case are as follows. The plaintiff is the widower of the late Ann Hall. On or about February 7, 1992, Mrs. Hall purchased a life insurance policy from third-party defendant Michael A. Esch, an agent for defendant Modern Woodmen of America ("MWA"). The policy was in the amount of $25,000 and named the plaintiff primary beneficiary.

Prior to her purchase of the policy, Mrs. Hall was given an application for insurance to complete and sign. Included in the application were the following questions. Her answers are recreated on the right of each question:

SECTION F—ADULT HEALTH INFORMATION

3. In the past 10 years, have you had or been told by a physician that you had:

\* \* \*

   b. dizziness, fainting, convulsions, epilepsy; paralysis or stroke; mental or nervous disease or disorder, or attempted suicide?     NO

   c. shortness of breath; blood spitting; bronchitis, asthma, emphysema, or other disease of the lungs or chronic respiratory disorder?     NO

\* \* \*

5. Have you within the last 10 years:

   a. used marijuana, cocaine, sedatives, stimulants, hallucinatory drugs, heroin, opiates or other narcotics, except as prescribed by a physician?     NO

   b. received or been advised to seek counseling, treatment or been arrested for the use of alcohol or drugs?     NO

6. Other than as stated in Questions 1–5 of this section, have you within the last 5 years:

   a. consulted or been examined or treated by any physician or practitioner?     NO

\* \* \*

   c. been a patient in or been examined or treated at a hospital, clinic, sanatarium, or other medical facility?     NO

---

The applicant further certified that her answers were "true, complete, and correctly recorded."

However, in defendant's motion for summary judgment, it is asserted that all of the above listed responses were incorrect, and further that these alleged mistakes or omissions were material to the company's decision to issue the policy. Accordingly, the defendant asserts that it is not bound by the insurance contract and seeks summary judgment to that effect.

## II.

When considering a motion for summary judgment, a district court must decide:

whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see, e.g., Lujan v. National Wildlife Fed'n, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

United States of America v. Douglas Tharp, et al., 973 F.2d 619 (8th Cir.1992). As the Supreme Court noted in National Wildlife and Celotex, "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695.

■ The plaintiff is proceeding against MWA on the alternative theories of breach of contract and the tort of bad faith. The breach of contract theory, standing alone, would not and does not meet the $50,000 "amount in controversy" requirement of the diversity statute, 28 U.S.C. § 1332.[1] The amount of the insurance policy is only $25,000 and punitive damages are not ordinarily allowable under Arkansas law in contract actions.

[W]e also conclude that the bar to punitive damages in [a breach of] contract action has been strengthened by a recent decision of the Arkansas Supreme Court. L.L. Cole & Son, Inc. v. Hickman, 282 Ark. 6,

---

1. Section 1332 provides in pertinent part:

   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, ..., and is between—

   (1) citizens of different states,....

665 S.W.2d 278 (1984). That decision reaffirms a sharp distinction between damage exposure for torts and on breach of contracts claims.

*Delta Rice Mill v. General Foods,* 763 F.2d 1001, 1006 (8th Cir.1985).

Therefore, the plaintiff must prevail on his bad faith claim, for which he might be awarded punitive damages, or not at all. Arkansas law relating to the tort of bad faith was discussed by the Arkansas Supreme Court in *Aetna Cas. and Sur. Co. v. Broadway Arms,* 281 Ark. 128, 664 S.W.2d 463 (Ark.1984):

> [I]n order to be successful a claim based on the tort of bad faith must include affirmative misconduct by the insurance company, without a good faith defense, and that the misconduct must be *dishonest, malicious, or oppressive* in an attempt to avoid its liability under an insurance policy. Such a claim cannot be based upon good faith denial, offers to compromise a claim or for other honest errors of judgment by the insurer. Neither can this type claim be based upon negligence or bad judgment so long as the insurer is acting in good faith.... [A]ctual malice is that state of mind under which a person's conduct is characterized by *hatred, ill will or a spirit of revenge.*

*Id.,* 664 S.W.2d at 465 (emphasis added).

In its summary judgment motion, supported with affidavits and other evidence, MWA asserts that the reason it investigated and eventually denied the plaintiff's claim was that the application for insurance did not accurately reflect the decedent's actual medical history in several material respects and that had MWA known her true medical history, it would have never issued the policy.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or ... otherwise ..., must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropri-

> ate, shall be entered against the adverse party.

Federal Rule of Civil Procedure 56(e) (in part).

Plaintiff's response to MWA's assertion of no bad faith is rather limited. He fails to dispute that the decedent's medical history as presented by MWA is substantially accurate and that therefore decedent's answers to pertinent questions on the insurance application form were materially untrue. Instead, he makes the factual assertion that agent Esch "knew that the deceased did not qualify for life insurance ... [y]et Esch sold it to her anyway." He also makes the assertion that not only does this conduct constitute "bad faith" conduct, but that Esch's knowledge and conduct should be attributed to MWA because Esch was their agent.

The Court finds that the plaintiff has not put into dispute (and indeed could not in good faith) that the decedent's actual medical history was materially different from the picture painted by her signed responses on the insurance application form as set out above. The materiality of those questions is obvious. Furthermore, the plaintiff has not asserted that anyone connected in any way with MWA ever knew that the decedent's purported medical history and her actual medical history were different, except for Mr. Esch.

Therefore, even if one assumes, *arguendo,* that the discrepancies regarding the decedent's health history were totally the result of actions by Mr. Esch, or at least known by him, and one also assumes that the act of writing a policy that one knows will never be honored rises to the level of the "bad faith" standard enunciated in *Broadway Arms,* plaintiff's claim against the insurance company is still dependant on imputing Mr. Esch's knowledge and conduct to MWA.

■ This brings us to the question of whether Mr. Esch was acting as a general agent of the company when he wrote the policy, in which case his acts can be imputed to the company, or merely a "soliciting" agent. This distinction is well established in Arkansas case law:

> A general agent is ordinarily authorized to accept risks, to agree upon the terms of

insurance contracts, to issue and renew policies, and to change or modify the terms of existing contracts. A soliciting agent is ordinarily authorized to sell insurance, to receive applications and forward them to the company or its general agent, to deliver policies when issued and to collect premiums. *Holland v. Interstate Fire Ins. Co.*, 229 Ark. 491, 316 S.W.2d 707 (1958). In addition, a soliciting agent *has no authority to agree upon the terms of the policies or to change or waive those terms, nor can his knowledge be imputed to the company he represents.*

*Dodds v. Hanover Ins. Co.*, 317 Ark. 563, 880 S.W.2d 311, 315 (1994) (emphasis added).

MWA has asserted that Mr. Esch was merely a soliciting agent for the company and has offered affidavits and other evidence, including a description of his duties, in support of that assertion. His purported duties were in all respects consistent with those of any generic soliciting agent.

It thus "bec[o]me[s] the [plaintiff's] burden to meet proof with proof and to show that [Esch] was authorized to accept such a risk on behalf of [MWA]." *Dodds*, 880 S.W.2d at 315. In plaintiff's response to the summary judgment motion, he certainly argues that "Esch was a general agent of the Defendant." However, he offers no proof on that point except Mr. Hall's deposition testimony that Esch had told him "suing Modern Woodmen is the same thing as suing him (Esch)." That is not enough. "With no further proof on this issue," *Id.*, the Court finds that no jury could reasonably find that Esch was a general agent of the defendant, and therefore had the actual authority to issue the policy, make waivers, or otherwise bind the company.

■ In his response to the summary judgment motion, the plaintiff takes the fallback position that even if Mr. Esch was acting as a soliciting agent, he was clothed with *apparent* authority "to act for [MWA] in receiving insurance applications and assisting applicants in properly completing them." It is true that a soliciting agent clothed with apparent authority to so act can bind his principal by contract. However, the burden of proving that such apparent authority could

be inferred rests with the plaintiff. *American National Insurance Co. v. Laird*, 228 Ark. 812, 311 S.W.2d 313, 315 (1958).

■ With regard to the duties cited by plaintiff, "[p]rocur[ing] applications for ... insurance" was not merely within Esch's *apparent* authority, it was a specific duty of his under his employment contract *as a soliciting agent*. As far as assisting an applicant in properly completing the application form, this seems to the Court to be a type of activity ordinarily exercised by a *soliciting* agent, and would therefore not cloak the agent with the authority of a general agent. *See, e.g., American National v. Laird*, 311 S.W.2d at 315 (collection of premiums is one of a soliciting agent's ordinary duties). The plaintiff has not put forth any specific facts which, if proved, would show that Mr. Esch was either a general agent or a soliciting agent with apparent authority to bind the company.

Finally, in plaintiff's response brief he offers a spirited, last-ditch effort which is essentially a public policy argument: the general/soliciting agent distinction is an unfair "ratchet" device that works only in favor of the insurance companies and against consumers. In other words, the agent is "their" man for any purpose convenient to the company, but he is a shield to hide behind at the first sign the company might want to avoid paying a claim. Be that as it may, that is the law in Arkansas until the General Assembly or the Arkansas Supreme Court sees fit to change it. The argument would merit no further discussion had not the plaintiff relied so heavily on the decision in *Stuckey v. Time Insurance Co.*, 669 F.Supp. 261 (E.D.Ark. 1987), a decision authored by this Court.

The Court believes the plaintiff's reliance on *Stuckey* is misplaced. *Stuckey*, along with another case decided the following week, *Grober v. Time Insurance*, No. LR–C–86–708, slip op. (E.D.Ark. Sept. 24, 1987), involved Time Insurance Company's failure to pay medical claims because of purported discrepancies between medical information provided on the insurance application form and the insured's "actual" medical status. In both cases, Time Insurance made the "solici-

tor agent" argument. Both cases were tried to the Court resulting in judgments for the plaintiffs.

In *Grober,* the Court determined that the solicitor v. general agent question need not even be reached because the applicable Arkansas statute [2] limited the insurance company's affirmative defenses under the policy to cases were the discrepancy on the application was the result of fraud, or was material, or such that the company would not have issued the policy had the true facts been known. The Court determined that there was no fraud, that the mistake was not at all material, and that the issue of whether the company would have issued the policy even if it had known the truth was a question of fact for the Court to decide. Noting gross inconsistencies in some of Time's evidence, the Court determined that the policy would have issued regardless of whether the particular application question had been answered differently and found for the plaintiff.

In *Stuckey,* the facts were very similar to those in *Grober,* as was the Court's decision. The Court found that the applicant had been entirely truthful to the agent who was filling out the form for her; that there was no fraud, but rather the agent mistakenly decided to omit information from the application because he thought it to be insignificant; that the information was not material anyway; and that the insurance company was put on *actual* notice of the omitted information from other responses on the application form.

Therefore, despite the fact that *Stuckey* contains a lengthy discussion of solicitor v. general agent case law, including a bit of rhetoric from the Court regarding how the "solicitor agent shield" can (and does) work a hardship in many cases, the Court found for Stuckey for essentially the same reasons it

found for Grober; none of the affirmative defenses available to the insurance company under the statute was found to apply. In other words, the Court did not have to "pierce" the solicitor agent shield, nor did the Court have to carve out any exception to the general rule that did not already exist under Arkansas case law. The Court merely had to apply the applicable statute to the facts as determined by the Court. In any event, the decision in *Stuckey* should be regarded as a narrow one, limited to the facts of that case.

In the instant case, however, the statute [3] offers no comfort to the plaintiff because the plaintiff has never denied that the several discrepancies in the decedent's application were material. Instead, he argues that the agent knew and that this knowledge should be imputed to the company. For the reasons set out above, that can not be done.

\* \* \*

■ No other proof being offered by the plaintiff, it is the Court's conclusion that the plaintiff has not met his burden under Rule 56 to counter MWA's assertion that Esch had neither actual nor apparent authority to bind MWA by contract, nor has he rebutted MWA's claim that no one connected with MWA, other than their *soliciting* agent, had any knowledge of the decedent's true medical history when the company issued the policy. Furthermore, he has not rebutted the defendant's assertion that the omissions from the insurance application form were material, nor has he rebutted defendant's assertion that had the company known the decedent's true medical history, it would not have issued the policy.

Therefore, even if one assumes that Esch knew the decedent's actual medical background, binding authority makes clear that

---

**2.** At the time *Stuckey* and *Grober* were decided, the statute in question was Ark.Stat.Ann. § 66–3208. It has since been essentially recodified as A.C.A. § 23–79–107.

**3.** The applicable part of A.C.A. § 23–79–107 reads as follows:
... Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1) Fraudulent; or
(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
(3) The insurer in good faith would not have issued the policy or contract ... if the facts had been made known to the insurer as required by the application for the policy or contract or otherwise.

**836**

that knowledge would not be imputed to MWA. Unless that knowledge could be imputed to MWA, plaintiff has not demonstrated any way he could prevail on a bad faith theory against MWA. For the reasons set out above, absent a recovery on a bad faith claim, the plaintiff has no other means of receiving punitive damages.

■ Accordingly, the Court grants partial summary judgment to the defendant on the issue of punitive damages. Because the face amount of the policy is only $25,000, without the prospect of receiving punitive damages, plaintiff has no way of reaching the $50,000 plateau necessary to meet the jurisdictional requirements of Section 1332. Accordingly, the plaintiff's case against Modern Woodmen of America is dismissed for lack of jurisdiction. The primary action having been dismissed, Modern Woodmen's third-party claim against Mr. Esch is dismissed as well.

IT IS SO ORDERED.